PREMIER CAPITAL, LLC *vs.* KMZ, INC.

Hampden. November 6, 2012. - March 7, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Limitations, Statute of. Negotiable Instruments,* Note. *Contract,* Under seal. *Statute,* Retroactive application. *Corporation,* Corporate successor liability. *Uniform Commercial Code,* Payment on negotiable instrument.

In a civil action involving a sealed promissory note, the Superior Court judge erred in granting summary judgment in favor of the defendant on the ground that the action had not been filed in a timely manner, where, although the six-year statute of limitations set forth in art. 3 of the Uniform Commercial Code, G. L. c. 106, § 3-118, governs notes executed under seal [469-473], the statute does not apply to causes of action that accrued before its enactment [473-474]; and where, under the twenty-year statute of limitations governing actions upon contracts under seal, the action was timely [474].

In a civil action involving a sealed promissory note, the Superior Court judge properly denied the plaintiff's motion for summary judgment, where the absence of any undisputed facts showing that the signatory to the note transferred all, or substantially all, of its assets to the defendant created a material issue of disputed fact whether the defendant was the successor in interest to the signatory. [474-476]

CIVIL ACTION commenced in the Superior Court Department on July 3, 2007.

The case was heard by *Constance M. Sweeney,* J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Thomas J. Morrissey* for the plaintiff.

*Carolyn L. McCaffrey* for the defendant.

DUFFLY, J. Premier Capital, LLC (Premier), is in the business of debt acquisition, management, and collection. Premier filed an action in the Superior Court on July 3, 2007, alleging that it is the current holder of a sealed promissory note (note) from Max Zeller Furs, Inc. (Zeller), executed on September 10, 1987,

and that KMZ, Inc. (KMZ), is liable on the note as the successor in interest.

KMZ and Premier filed cross motions for summary judgment. A Superior Court judge allowed KMZ's motion on the ground that Premier's complaint was not timely filed. Nonetheless, the judge also denied Premier's cross motion after concluding that there was a genuine issue of material fact whether KMZ is a successor in interest to Zeller. Premier appealed, and we transferred this case here on our own motion in order to decide whether the six-year statute of limitations set forth in art. 3 of the Uniform Commercial Code (UCC), G. L. c. 106, § 3-118, governs an action on a sealed promissory note.

We conclude that G. L. c. 106, § 3-118, does apply, but only to causes of action accruing after its enactment in 1998. Consequently, because Premier's cause of action accrued before G. L. c. 106, § 3-118, was enacted, and the note upon which Premier filed suit was executed under seal, Premier timely commenced its action against KMZ under the twenty-year statute of limitations governing actions on contracts under seal, G. L. c. 260, § 1. Therefore, KMZ's motion for summary judgment should have been denied.

We conclude also that Premier's motion for summary judgment was denied properly. Premier maintained that the undisputed facts in the summary judgment record establish that KMZ is the successor in interest to Zeller, one of two corporations that executed the note,[1] such that Premier was entitled to summary judgment against KMZ. We disagree, and conclude that Premier has not met its burden of showing that the undisputed facts establish that KMZ is the successor in interest to Zeller.

1. *Background and prior proceedings.* Zeller was founded in 1922 by Max Zeller; it was organized as a Massachusetts cor-

---

[1]The other signatory to the note was Zellson Corp. Premier's complaint alleges that KMZ, Inc. (KMZ), is the successor in interest to both Max Zeller Furs, Inc. (Zeller), and Zellson Corp., but the summary judgment record includes little about Zellson Corp. The record indicates merely that Eugene Zeller was its president and a shareholder before his death in 1997; the corporate addresses registered with the corporations division of the Secretary of the Commonwealth for Zeller and Zellson Corp. were the same; and Zellson Corp. was involuntarily dissolved on August 31, 1998. In their briefs, the parties' arguments focus on Zeller and its relationship to KMZ.

poration in 1967, and Max Zeller's son, Eugene Zeller, thereafter became the owner and operator of Zeller. On September 10, 1987, Zeller executed a promissory note under seal. According to the terms of the note, Zeller promised to pay the First National Bank of Boston the principal amount of $350,000, plus interest, in monthly instalments over a term of 246 months. Full payment of the principal under the note was due on March 10, 2008. The note also gave the noteholder the ability to demand repayment of the principal balance, plus accrued interest, five years from the date of execution or any time thereafter.

Zeller failed to make the required monthly payments. As a result, in January, 1996, AMRESCO New England, Inc., the noteholder at that time, issued a notice of default and demand for payment in full to Zeller. To satisfy the debt, AMRESCO New England II, L.P., a later noteholder, foreclosed on certain properties, and, as of January, 1998, there remained a deficiency balance under the note in the amount of $543,046.82 (the unpaid principal and accrued interest). Shortly thereafter, on August 31, 1998, Zeller was involuntarily dissolved.

On July 3, 2007, Premier filed this action against KMZ, alleging that Premier is the current holder of the note and that KMZ is liable on the note as the successor in interest to Zeller. Following discovery that included depositions of Eugene Zeller's sons Michael and Kevin, who are officers of KMZ, the parties filed their cross motions for summary judgment.

2. *Statute of limitations.* We first consider whether an action to enforce a sealed promissory note is subject to the six-year statute of limitations governing actions to enforce promissory notes, G. L. c. 106, § 3-118, or to the twenty-year statute of limitations governing actions "upon contracts under seal," G. L. c. 260, § 1.[2] This issue presents a question of law appropriate for resolution on summary judgment. See, e.g., *Afarian* v. *Massachusetts Elec. Co.*, 449 Mass. 257, 261 (2007); *Cabot Corp.* v. *AVX Corp.*, 448 Mass. 629, 637-640 (2007). We review a decision to grant or deny summary judgment de novo. *Federal Nat'l Mtge. Ass'n* v. *Hendricks*, 463 Mass. 635, 637 (2012).

[2]General Laws c. 260, entitled "Limitation of Actions," sets forth, among other periods of limitation, those actions requiring commencement "within twenty years next after the cause of action accrues." These include "[a]ctions upon contracts under seal." G. L. c. 260, § 1, First.

a. *Whether G. L. c. 106, § 3-118, governs notes executed under seal.* General Laws c. 106, § 3-118,[3] forms part of art. 3 of the UCC, the law of negotiable instruments. See G. L. c. 106, § 3-102. The Legislature has stated that the UCC "shall be liberally construed and applied to promote its underlying purposes and policies." G. L. c. 106, § 1-102 (1). The stated purposes of the UCC include the simplification, clarification, and modernization of commercial law, G. L. c. 106, § 1-102 (2) (*a*), and the promotion of uniform commercial laws across jurisdictions. See G. L. c. 106, § 1-102 (2) (*a*)-(*c*). See also *Gossels* v. *Fleet Nat'l Bank*, 453 Mass. 366, 370 (2009) (UCC designed to avoid "a motley patchwork of liability standards from State to State"). It is in light of these purposes and the history of its enactment that we consider the meaning of the limitations periods in G. L. c. 106, § 3-118.

The Legislature first enacted G. L. c. 106, § 3-118, in 1998, as part of a complete rewriting of art. 3.[4] The 1998 legislation, which adopted the revised version of art. 3 published by the American Law Institute and National Conference on Uniform State Laws in 1990, marked "a major overhaul" of the implementation of the Massachusetts version of art. 3, which

---

[3]General Laws c. 106, § 3-118, provides, in relevant part:

> "(*a*) Except as provided in subsection (*e*), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date.

> "(*b*) Except as provided in subsection (*d*) or (*e*), if demand for payment is made to the maker of a note payable on demand, an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand. If no demand for payment is made to the maker, an action to enforce the note is barred if neither principal nor interest on the note has been paid for a continuous period of ten years."

Subsections (*d*) and (*e*) govern demand for payment of a check or a certificate of deposit. See G. L. c. 106, § 3-118 (*d*), (*e*).

[4]See St. 1998, c. 24, § 8. In addition to revising art. 3, the 1998 legislation also revised provisions governing bank deposits and collections. See *id.* (entitled "An Act relative to the uniform commercial code dealing with negotiable instruments and bank deposits and collections").

had been enacted in 1957.[5] See 2 J.J. White & R.S. Summers, Uniform Commercial Code § 16-2, at 72 (5th ed. 2008).

Before the 1998 enactment of G. L. c. 106, § 3-118, there was no uniform statute of limitations governing actions to enforce negotiable instruments. Instead, parties were obliged to consider general statutes of limitations located in various statutory provisions outside the UCC to determine the applicable time frame within which to file suit. See H. Lemelman, Manual on Uniform Commercial Code § 3:53 (rev. 3d ed. 2012). See also 2 J.J. White & R.S. Summers, Uniform Commercial Code, *supra* at § 16-16. In Massachusetts, as in other jurisdictions, the applicable statute of limitations depended on whether the negotiable instrument at issue was sealed or unsealed. See H. Lemelman, Manual on Uniform Commercial Code, *supra* at § 3:53. See also 1 Williston, Contracts § 2:21, at 225 (R. Lord 4th ed. 2007) (under old version of art. 3, "state statutes of limitation providing for different periods of limitation respecting sealed instruments would retain vitality").

The Legislature changed this regime by enacting G. L. c. 106, § 3-118, which created a uniform statute of limitations for all actions arising under art. 3. As the official comment to UCC § 3-118 states, this statute of limitations is designed "to define the time within which an action to enforce an obligation, duty, or right arising under Article 3 must be commenced." 2 U.L.A. 94 (Master ed. 2004).[6] The purpose underlying its adoption is clear: to increase uniformity in the law of negotiable instruments across States, such that parties need not look beyond art. 3 to determine the applicable time frame within which to file suit. The enactment of G. L. c. 106, § 3-118, was intended to "replace the earlier need to reference the general statute of limitations found in [G. L.] c. 260." H. Lemelman, Manual on Uniform Commercial Code, *supra* at § 3:53, at 456 ("The notion is to create uniform time periods within which actions must

---

[5]St. 1957, c. 765, § 1.

[6]"UCC Official Comments 'do not have the force of law, but are nonetheless the most useful of several aids to interpretation and construction of the [UCC].' " *JOM, Inc.* v. *Adell Plastics, Inc.*, 193 F.3d 47, 57 n.6 (1st Cir. 1999), quoting *LTV Energy Prods. Co.* v. *Northern States Contr. Co.*, 162 B.R. 949, 955 n.5 (Bankr. S.D.N.Y. 1994).

be brought and create consistency with the expectations of commercial holders of such instruments").

General Laws c. 106, § 3-118, takes the place of all other statutes of limitations that might otherwise apply to negotiable instruments. As the Prefatory Note to the revised art. 3 states, "[§] 3-118 . . . include[s] statutory periods of limitations which will make the law uniform rather than leaving the topic to widely varying state laws." 2 U.L.A. 13, Commissioner's Prefatory Note (Master ed. 2004). Commentators on the UCC have pointed to the addition of this statute of limitations as a step toward greater uniformity and clarity in the law of negotiable instruments. See 2 J.J. White & R.S. Summers, Uniform Commercial Code, *supra* at § 16-16, at 165 ("The new statute of limitations provisions will be useful clarifications and will help minimize problems formerly associated with pawing around in a state's disorganized body of statutory and case law on limitations"). See also 1 Williston, Contracts, *supra*.

Notwithstanding this clearly stated policy underlying the enactment of G. L. c. 106, § 3-118, Premier contends that this statute of limitations does not apply to the note at issue because the statute does not explicitly state that it applies to sealed instruments and, therefore, that G. L. c. 260, § 1, concerning "contracts under seal" controls.

Contrary to Premier's argument, the law of negotiable instruments has applied to sealed and unsealed instruments alike since 1898.[7] The version of art. 3 repealed by the Legislature in

---

[7]"Prior to the adoption of the Negotiable Instruments Law [in 1898], a promissory note under seal was generally considered a common law specialty and not negotiable." Note, Effect of Seal on Form of Action, 43 Harv. L. Rev. 654, 654 (1930). See 1 Williston, Contracts § 2:21, at 225 (R. Lord 4th ed. 2007) ("At common law, a negotiable instrument had to be unsealed . . ."). When enacted in 1898, St. 1898, c. 533, the negotiable instruments law provided that the negotiability of an instrument would not be affected by whether it was made under seal. See R. L. (1902) c. 73, § 23 ("The validity and negotiable character of an instrument are not affected by the fact that . . . [it b]ears a seal").

Article 3, which replaced the negotiable instruments law in 1957, see St. 1957, c. 765, §§ 1-2, continued to provide that "[a]n instrument otherwise negotiable is within this Article even though it is under a seal." G. L. c. 106, § 3-113. "That version . . . remained in effect, with some amendments, until 1998, when Massachusetts adopted the 1990 [UCC] revisions, which, with a

1998 had provided that "[a]n instrument otherwise negotiable is within this Article even though it is under a seal." G. L. c. 106, § 3-113. Although the revised version of art. 3 does not contain an equivalent provision, it did not change sub silentio the long-standing rule that the law of negotiable instruments applies equally to sealed and unsealed instruments. See *Commonwealth* v. *Burke*, 390 Mass. 480, 486 (1983), quoting *Ferullo's Case*, 331 Mass. 635, 637 (1954) ("It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed"). As a member of the drafting committee for revised art. 3 explained, "Former U.C.C. section 3-113 on the effect of a seal is omitted as unnecessary." Miller, U.C.C. Articles 3, 4 and 4A: A Study in Process and Scope, 42 Ala. L. Rev. 405, 417 n.32 (1991). Indeed, the inclusion in the revised art. 3 of a statute of limitations to govern all actions upon negotiable instruments addressed the only remaining significance of a seal on a negotiable instrument — the applicable statute of limitations — rendering the former § 3-113 unnecessary. See H. Lemelman, Manual on Uniform Commercial Code, *supra* at § 3:42 ("The enactment of a distinct statute of limitations for negotiable instruments in [G. L. c. 106, § 3-118,] has significantly reduced the impact of a seal on an instrument, principally a promissory note"); 1 Williston, Contracts, *supra* (revised art. 3 omitted former § 3-113 but "also added a uniform statute of limitation, the most serious concern affected by sealed instruments").

In light of the UCC's clearly stated purpose to provide a uniform statute of limitations for all actions under art. 3, we conclude that the omission of former § 3-113 from the revised art. 3 has no bearing on the applicability of the statute of limitations set forth in G. L. c. 106, § 3-118, and that G. L. c. 106, § 3-118, applies to all negotiable instruments, sealed and unsealed.

b. *Whether G. L. c. 106, § 3-118, applies retroactively.* This does not end our inquiry, however. We must next consider whether G. L. c. 106, § 3-118, applies retroactively to Premier's cause of action, which accrued before the enactment of G. L. c. 106,

---

few amendments, remain in effect today." *Bank of Am., N.A.* v. *Prestige Imports*, 75 Mass. App. Ct. 741, 748 n.11 (2009).

§ 3-118.[8] To decide this issue, we apply the general rule that, absent clear legislative intent to the contrary, a newly enacted statute of limitations "controls future procedure in reference to previously existing causes of action." *Anderson* v. *Phoenix Inv. Counsel of Boston, Inc.*, 387 Mass. 444, 453 54 (1982).

The Legislature has addressed explicitly the retroactive effect of G. L. c. 106, § 3-118, stating that the statute "shall not apply to any causes of action that have accrued before the effective date of this act." St. 1998, c. 24, § 16. Given this clear expression of legislative intent, G. L. c. 106, § 3-118, applies only to causes of action that accrue after the date of its enactment. Cf. *Springfield Library & Museum Ass'n* v. *Knoedler Archivum, Inc.*, 341 F. Supp. 2d 32, 37-38 (D. Mass. 2004). Therefore, in considering the applicable limitations period for Premier's action, we look to the statute of limitations in effect before 1998. Under the twenty-year statute of limitations governing actions "upon contracts under seal" set forth in G. L. c. 260, § 1, Premier's complaint was timely filed,[9] and should not have been dismissed as untimely.

3. *Successor liability.* Premier claims that its motion for summary judgment should have been allowed because the summary judgment record establishes that KMZ is the successor in interest to Zeller.

To prevail on a motion for summary judgment, the moving party bears the burden of "show[ing] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" based on the undisputed facts. Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). See, e.g., *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). In considering a motion for summary

---

[8]Regardless whether Premier's cause of action accrued for purposes of G. L. c. 106, § 3-118, on the date that the note was executed (September 10, 1987), the first date that demand could have been made (September 10, 1992), or the date that the notice of default and demand for payment in full were made (January 30, 1996), the cause of action accrued before the enactment of G. L. c. 106, § 3-118, in 1998.

[9]Premier filed its complaint in the Superior Court on July 3, 2007, within twenty years of the date of execution of the note, the first date on which demand could have been made, and the date on which demand was made. See note 8, *supra*.

judgment, we view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. See, e.g., *Currier* v. *National Bd. of Med. Examiners*, 462 Mass. 1, 11 (2012); *Petrell* v. *Shaw*, 453 Mass. 377, 378 (2009).

"In order for one corporation to be deemed a successor corporation in the first place, it must be a successor to all, or substantially all, of another corporation's assets." *National Soffit & Escutcheons, Inc.* v. *Superior Sys., Inc.*, 98 F.3d 262, 266 (7th Cir. 1996). In other words, a transfer of assets is "an essential prerequisite to successor liability." *Carreiro* v. *Rhodes Gill & Co.*, 68 F.3d 1443, 1448 (1st Cir. 1995).[10] Our decisions addressing successor liability have recognized consistently that successor liability depends on a transfer of all, or substantially all, assets from predecessor to successor. See, e.g., *Milliken & Co.* v. *Duro Textiles, LLC*, 451 Mass. 547, 556 (2008), quoting *Guzman* v. *MRM/Elgin*, 409 Mass. 563, 566 (1991); *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356, 362 (1997). In those cases, we applied the rule that "the liabilities of *a selling predecessor corporation* are not imposed upon the *successor corporation which purchases its assets*, unless (1) the successor expressly or impliedly assumes liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid liabilities of the predecessor" (emphasis added). *Milliken & Co.* v. *Duro Textiles, LLC*, *supra*, quoting *Guzman* v. *MRM/Elgin*, *supra*. See *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, *supra*.

Applying the same rule, the United States Court of Appeals for the First Circuit held in *Carreiro* v. *Rhodes Gill & Co.*, *supra* at 1446-1447, that one defendant corporation, H. Leach Machinery Company (Leach), was not the successor to a dissolved corporation because the dissolved corporation had never

[10]See also Per-Co, Ltd. *vs.* Great Lakes Factors, U.S. Ct. App., No. 07-4029 (6th Cir. Nov. 4, 2008) (applying Ohio law); *Medicine Shoppe Int'l, Inc.* v. *S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803-804 (8th Cir. 2003) (applying Missouri law); *Williams* v. *Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132 (10th Cir. 1991) (applying Oklahoma law); *Acheson* v. *Falstaff Brewing Corp.*, 523 F.2d 1327, 1330 (9th Cir. 1975) (applying California law); *Evanston Ins. Co.* v. *Luko*, 7 Haw. App. 520, 523 (1989); *Meisel* v. *M & N Modern Hydraulic Press Co.*, 97 Wash. 2d 403, 407 (1982).

transferred assets to Leach. Leach had been in the business of selling new and used machine tools. *Id.* at 1445. Several members of the Leach family — all shareholders or officers of Leach — started a new corporation, Main Machinery Co. (Main), that also sold new and used machine tools, and Leach was dissolved two years later. *Id.* Based on the undisputed evidence in the summary judgment record, the court concluded that there was no evidence that Leach ever transferred assets to Main, see *id.* at 1446-1447, and declined to infer that there had been a transfer of good will based only on the facts that the two corporations had engaged in the same business, shared the same customer base, and shared some of the same employees. See *id.* at 1449.

We conclude that the absence of any undisputed facts showing that Zeller transferred all, or substantially all, of its assets to KMZ creates a material issue of disputed fact whether KMZ is the successor in interest to Zeller. The record contains no undisputed facts establishing that Zeller ever assigned any of its leases or contracts to KMZ. Premier contends that Zeller transferred its good will[11] to KMZ; however, Premier has identified no agreement, express or implied, between Zeller and KMZ to transfer that good will. At most, the undisputed facts show that KMZ operated the same kind of business as did Zeller, sold its products from some of the same locations after Zeller had ceased its own operations, and used variations of the Zeller family name in labeling its products. These facts alone are insufficient to establish successor liability on summary judgment. See *Meisel* v. *M & N Modern Hydraulic Press Co.*, 97 Wash. 2d 403, 409 (1982) (no successor liability, even though new corporation with similar name used "same land, buildings, and equipment," because there was no transfer of assets from old corporation to new corporation).

Because Premier has not met its burden of showing that the undisputed facts establish that KMZ is the successor in interest to Zeller, Premier's motion for summary judgment properly was denied. See, e.g., *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, *supra.*

4. *Conclusion.* The judgment allowing KMZ's motion for summary judgment and dismissing the complaint is reversed.

---

[11]Good will is an asset that can be transferred. See, e.g., *Canadian Club Beverage Co.* v. *Canadian Club Corp.*, 268 Mass. 561, 568 (1929).

The denial of Premier's motion for summary judgment is affirmed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*