Kazanjian, Helene, J.
Plaintiff minor Mary Doe (“Mary”), by and through her parents, brought this case against the defendants, alleging that during the 2009-2010 school year, defendant William S. Howard (“Howard”), a Hopkinton teacher, sexually molested Mary, an eleven-year-old student. The matter is before the court on a motion for summary judgment filed by defendants Town of Hopkinton and Hopkinton Public Schools (collectively the “Town”), John Phelan (“Phelan”), William Lynch (“Lynch”), Jason Webster (“Webster”) and William Meehan (“Meehan”). After a hearing and careful consideration of the parties’ written submissions, the motion for summary judgment is ALLOWED in part, and DENIED in part.
BACKGROUND
The following material facts are taken from the summary judgment record.[1]
Phelan is the former Hopkinton School Superintendent; Lynch is the former Principal of the Hopkinton Middle School; Webster is the former Middle School Assistant Principal; and Meehan is a Hopkinton Middle School guidance counselor.
During the 2009-2010 academic year, Mary was eleven years old and a sixth grade student at Hopkinton Middle School. Howard was her homeroom and science teacher. Mary alleges that Howard sexually assaulted and molested her repeatedly at various locations at the Hopkinton Middle School. The allegations are that Howard touched Mary’s hips, back, shoulders, buttocks, bra strap, breasts and between her legs, and that he would put his pelvis near her face while she was sitting at her desk. It is also alleged that Howard reached down into Mary’s shirt and lifted up a necklace that was hanging between her breasts. Mary began to noticeably struggle emotionally in her sixth grade year. Her friends reported that she became dark and seemed unhappy. By seventh grade, her friends described her as a “totally different person.” Mary began scratching and cutting herself and was hospitalized. She reported the abuse by Howard to a therapist. Her parents learned of the alleged abuse from the therapist in May 2011.
Prior to Mary’s report of sexual assault, there had been a history of reports to school officials about Howard’s behavior. At least since 2005, students reported witnessing Howard engaging in inappropriate touching of girls during class. He had a reputation of being “creepy,” a “perv” and someone who “hit on girls.” Howard was also observed taking photographs of female students in places that were deemed inappropriate, such as a cabin on a field trip where girls were in various stages of undress and backstage during school plays. It is also alleged that Howard had students change into bathing suits in his storage area in back of his classroom for a water displacement “density” experiment.
Plaintiffs describe a number of specific instances where parents or students complained to the school about Howard’s conduct. Some examples of these instances are described below.
During the 2005-2006 academic year, a parent walked in on Howard with her daughter in a dark room performing an experiment. The same parent subsequently found her daughter again alone with Howard after school in a room in the school library. She saw the defendant and her daughter sitting in two chairs with their legs interlocked and his hand on her thigh. The parent spoke to school officials about the incident but she cannot remember exactly who, although she thought it might have been Dr. Lyons, who was the assistant principal at the time. She also recalls speaking to Meehan, who told her that he would tell Howard that the student would not be staying after school to work on the project anymore. Howard remembers being spoken to by Lynch, not Meehan, about the incident and he was told that his relationship with that student was to end. The student remembers that a year or two after she was no longer in Howard’s class, she spoke to Meehan, along with one or two other students, about Howard’s inappropriate behavior. Specifically, she told Meehan that Howard rubbed her shoulders in class, hugged her and kissed her on the forehead. She remembers Meehan responding; “Oh, *138 that’s just Mr. Howard. That’s what he does. He grew up in a touchy-feely home, so that’s what he does.”
In 2008, one or more female students reported to the school adjustment counselor, Debby Arienti, that Howard’s touching them made them uncomfortable and that he was “creepy.” The following academic year, Meehan heard that Howard was making female students uncomfortable by touching them, although he understood that the touching was not sexual. Meehan told Howard to be careful not to touch female students, and Howard agreed to try to stop.
In April 2009, a female student told Webster that Howard had picked up her necklace, which was hanging between her shirt and jacket, and commented that it was nice, before putting it back on her chest. The student told Webster that this incident made her uncomfortable. Webster verbally counseled Howard and he apologized to the student.
As a general matter, prior to the 2009-2010 school year, Howard had been told several times[2] that he should not be touching female students. Despite these warnings there were multiple reports that he continued the behavior. Howard admitted in his deposition that he touched students and claimed that he was “wired that way.”
In April 2010, the Town began an investigation into allegations that Howard engaged in inappropriate conduct with students. These allegations were brought to the attention of the Town by the director of religious education at St. John the Evangelist Church in Hopkinton. The allegations did not involve Maiy but three other students in the church’s religion classes. Howard was placed on administrative leave during the investigation. Students, parents and school staff members were interviewed. As a result of the investigation, the Assistant Superintendent, Maiy Colombo, filed reports regarding several students with the Department of Children and Family. None of these reports related to Maiy, although Maiy was interviewed during the investigation. Maiy did not reveal instances of sexual misconduct during her interview. She told investigators that Howard was a “fun teacher,” a “really good teacher” and that he made “things understandable.” She denied that Howard had asked her to keep any secrets. When asked whether Howard had done or said anything that was not right, Maiy responded “not really.” There were no follow-up questions to that response.
Other students did report that Howard engaged in inappropriate conduct, such as rubbing students’ shoulders, lower backs and buttocks. It was reported that he often brushed up against students and used obscenities in front of them. The investigation also concluded that Howard had committed other violations of school policy, including smoking cigarettes on school grounds, and improperly storing mercury in his classroom. The school decided that Howard’s misconduct was significant enough to warrant dismissal. He resigned. Howard was not at the school from the beginning of the investigation and never returned.
Up through the 2009-2010 school year, the Town did not train its school administrators, teachers or staff regarding sexual harassment of students. The school only had a policy relating to employee-on-employee sexual harassment.
DISCUSSION
I. Standard
The Town, Lynch, Phelan, Meehan and Webster (collectively the “Defendants”) have moved for summary judgment. A party moving for summaiy judgment has the burden of demonstrating that there is no genuine issue as to any material fact and that she is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cmty. Nat'l Bank v. Dawes, 369 Mass. 550, 554 (1976). The burden on the moving party may be satisfied either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating “that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). In deciding a motion for summaiy judgment, the facts must be viewed in the light most favorable to the nonmoving party. Premier Capital, LLC v. KMZ, 464 Mass. 467, 474475 (2013); G.S. Enters., Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991). A request for summaiy judgment must be denied where a claim turns on disputed issues of fact or on disputed inferences from admitted facts. See Molly A. v. Comm’r of Dep’t of Mental Retardation, 69 Mass.App.Ct. 267, 284 (2007) (“[SJummary judgment cannot be granted if the evidence properly before the motion judge reveals a genuine issue of disputed material fact”); Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 811-12 (1991) (“Whereajury can draw opposite inferences from the evidence, summaiy judgment is improper”).
II. Analysis
A. G.L.c. 151C and 214 (Counts 2 and 3)
The parties agree that a claim can be brought under G.L.c. 151C and 214. They disagree, however, on the appropriate standard that should be applied to a student’s allegations of sexual harassment by a teacher. Plaintiffs allege that the Town is strictly liable under a vicarious liability theoiy. The Town contends that the court should apply the “deliberate indifference” standard applicable to Title IX claims. Massachusetts appeals courts have not resolved this issue. See Morrison v. N. Essex Cmty. Coll., 56 Mass.App.Ct. 784, 780 n. 17 (2002) (the court reserves ruling on the issue of whether c. 151C claims against an educational institution require that its administrators have knowledge of the harassment as is required by Title IX; see also Doe v. Bradshaw, 2016 WL 4497061, at *20 (D.Mass. 2016) (Massachusetts courts have not resolved the question of whether the standard for 214 *139 and 151C claims Is strict vicarious liability or deliberate indifference); Bloomer v. Becker Coll., 2010 WL 3221969, at *7 (D.Mass. August 13, 2010) (There is no Massachusetts authority “stating that knowledge of the misconduct is a necessary element for recovery under Chapter 151C”).
In Doe v. Bradshaw, the U.S. District Court for the District of Massachusetts rejected the defendants’ argument that the deliberate indifference standard of Title IX is applicable to 151C claims, and held that a strict vicarious liability standard applies. 2016 WL 4497061, at *20. The court agrees with the analysis in that case that while the Legislature’s intent is unclear from the text of G.L.c. 151C, chapter 151C claims are distinguishable from Title IX claims since “Title IX impose[s] quasi-contractual funding conditions rather than directly regulating behavior, making notice particularly important ...” Id. at *20. Unlike Title IX, chapters 214 and 151C are not based on a funding condition. Id.
In contrast, Plaintiffs urge the court to apply the standard applicable to c. 15 IB claims involving sexual harassment of an employee by a supervisor to claims under c. 151C involving sexual harassment of a student by a teacher. The analogy is not perfect since the basis for strict vicarious liability under 151B, at least in part, is grounded in the statutory language. See College-Town Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 1674 (1987). In College-Town, the defendant argued in connection with a 151B claim, that “it should not be ‘strictly liable’ for the conduct of a supervisor creating a sexually harassing work environment.” Id. at 165. The Court disagreed with this characterization of the plaintiffs liability since the relevant statute, “prohibits discrimination by ‘an employer, by himself or his agent’ ” and thus the plaintiff employer was “vicariously liable for the acts of its agents — its supervisory personnel.” Id.
G.L.c. 151C, §2, does not contain similar language, but rather provides that “(i]t shall be an unfair educational practice for an educational institution . . . [t]o sexually harass students in any program or course of study in any educational institution.” (Emphasis added.) However, in College-Town the Supreme Judicial Court also noted that “it is the authority conferred upon a supervisor by the employer that makes the supervisor particularly able to force subordinates to submit to sexual harassment.” 400 Mass, at 166. This rationale applies equally to claims involving sexual harassment of a student by a teacher, in that a teacher, like a supervisor, is conferred with authority over his or her students. See Sch. Comm. of Lexington v. Zagaeski, 469 Mass. 104, 119 (2014) (“A teacher who models sexually harassing behavior in front of public school students as if it is all in good fun undercuts our constitutional value of freedom from gender discrimination . . . Indeed students who witness a teacher engage in such conduct may come to believe that such conduct is acceptable in an academic or professional setting” (internal citations omitted)). For these reasons, the court concludes that a school is strictly liable under c. 151C for the sexual harassment of a student by a teacher.
Accordingly, the Town’s motion for summary judgment on Counts 2 and 3 is DENIED,[3]
B. Tide IX (Count 4)
Title IX provides in relevant part that “no person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .” 20 U.S.C. § 1681 (a). Students alleging sexual harassment by a teacher have a private right of action for the recovery of damages. See Gebser v. Lago Vista Indep. Sch. Dist. 524 U.S. 274, 290, 291 (1998); Morrison, 56 Mass.App.Ct. at 787; see also Franklin v. Gwinnet Cnty. Pub. Schs., 503 U.S. 60, 76 (1992); Cannon v. Univ. of Chicago, 441 U.S. 677, 717 (1979); Wills v. Brown Univ., 184 F.3d 20, 25 (1st Cir. 1999). To hold the Town liable under Title IX, Plaintiffs must show that the Town had actual knowledge of the harassment and was deliberately indifferent to Howard’s misconduct. See Gebser, 524 U.S. at 292-93; Doe v. Bradshaw, 2016 WL 4497061, at *12; Hunter ex Rel. Hunter v. Barnstable Sch. Comm., 456 F.Sup.2d 255, 265 (D.Mass. 2006).
To meet this standard, Plaintiffs must first establish that “an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipients behalf has actual knowledge of the discrimination . . . and fails adequately to respond . . . [T]he response must amount to deliberate indifference to discrimination.” Gebser, 524 U.S. at 290. Actual notice is established if the Town had knowledge of sexual harassment by Howard against any student at the school. See id. at 290 (recipient school must have “actual knowledge of discrimination in the recipient’s programs”); Morrison, 56 Mass.App.Ct. at 799 (same); see also Bloomer, 2010 WL 3221969, at *4-5 (sufficient if school had “knowledge about the alleged harasser’s conduct towards others which indicates some degree of risk that the harasser would subject the plaintiff to similar treatment”). The summary judgment record sufficiently establishes that there is adequate evidence that over the years students and parents reported Howard’s conduct to various school officials, including defendants Meehan, Lynch and Webster, various other guidance counselors, drama teacher Qifford and Assistant Superintendent Lyons. Defendants deny many of these allegations, and argue that some of these individuals do not constitute “appropriate persons” within the meaning of the statute. An appropriate person is someone who has the authority to implement corrective measures to stop the discrimination. Gebser, 524 U.S. at 290; see also Fitzgerald v. Barn- *140 stable Sch. Comm., 555 U.S. 246, 257 (2009) (“a Title IX Plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference”). Because the questions about who was notified, what they were told and whether the notified persons were in a position to effect change at the school, are questions of material fact in dispute,[4] summary judgment is not warranted.
Plaintiffs must next establish that school officials acted with deliberate indifference. “If the institution takes timely and reasonable measures to end the harassment, it is not liable under Title IX for prior harassment.” Wills, 184 F.3d at 26. The Town argues that the undisputed facts establish as a matter of law that the school took appropriate measures in response to each report of misconduct by Howard. The court disagrees. Plaintiffs have set-forth sufficient facts supporting their contention that the responses of the various administrators to complaints about Howard were inadequate. For example, in response to multiple reports of inappropriate behavior, Howard was merely told to stop touching students. Arguably this response was insufficient. In the end, whether the school “responded reasonably, or with indifference” is dependent upon the specific circumstances known to the school at the time. Since resolution of these issues requires determination by a factfinder at trial, Morrison, 56 Mass.App.Ct. at 800, summary judgment on Count 4 is DENIED.
C. 42 U.S.C. Section 1983 (Counts 5 and 15) 1. Individual Defendants
Defendants move to dismiss the claims brought pursuant to 42 U.S.C. §1983 against the individual defendants, Phelan (former Superintendent), Lynch (former Middle School Principal), Webster (former Middle School Assistant Principal) and Meehan (Middle School guidance counselor). For there to be supervisory liability under section 1983, Plaintiffs must establish that (1) the subordinate (in this case Howard) is liable; and (2) the supervisor’s action or inaction was “affirmatively linked” to Howard’s behavior. Doe v. Bradshaw, 2016 WL 4497061, at * 11 (quoting Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998)); Doe v. D'Agostino, 367 F.Sup.2d 157, 170 (D.Mass. 2005).
There is no dispute that Mary’s allegations against Howard would, if proved, trigger liability under §1983. See Doe v. Fournier, 851 F.Sup.2d 207, 219 (D.Mass. 2012) (“It is beyond question that the Fourteenth Amendment protects the right to bodily integrity and that right” is violated when a teacher sexually abuses a student).
To prove the second element, Plaintiffs must establish that the supervisor’s actions (or inactions) “constitute ‘supervisory encouragement, condonation or acquiescence, or gross negligence amounting to deliberate indifference.’ ” Doe v. Bradshaw, 2016 WL 4497061, at *5 (quoting Lipsett v. University of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1996)). Deliberate indifference exists where “it would be manifest to any reasonable official that his conduct was very likely to violate an individual’s constitutional rights.” Id. (quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)). Defendants claim that there is insufficient evidence that the individual defendants were deliberately indifferent. The court must evaluate the evidence individually as to each named defendant.
The summary judgment record reflects that instances of misconduct by Howard are alleged to have been reported to Lynch, Webster and Meehan.[5] It is arguable that Lynch and Meehan had notice that Howard was sexually harassing students as far back as 2005, and Webster had notice in 2009. A full investigation was not conducted until 2010. As discussed previously, there are genuine issues of material fact as to whether these individuals responded appropriately or acted with deliberate indifference.
On the other hand, Plaintiffs have not identified any facts supporting their claim that defendant Phelan had any knowledge of Howard’s conduct prior to the commencement of the investigation in April 2010. Plaintiffs’ responses in the Joint Statement of Facts relating to notice to Phelan merely refer to notice to “Phelan’s Office.” Summary judgment is, therefore, appropriate as to him.
Accordingly, Defendants Lynch. Meehan and Webster’s motion lor summary judgment on Count 5 is DENIED. Defendant Phelan’s motion for summary judgment on Count 5 is ALLOWED.
2. The Town
The Town moves to dismiss the §1983 claims brought against it, arguing that there is no evidence that the Town acted with deliberate indifference or that any Town policy caused Mary’s injuries. The Town cannot be vicariously liable under §1983 for the actions of its employees. See Connick v. Thompson, 563 U.S. 51, 60-61 (2011); Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658, 691 (1978). Therefore, the Town’s motion for summary judgment on Count 15 is ALLOWED.
For the Town to be liable there must be evidence that “execution of a government’s policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983.” Monell 436 U.S. at 694; see also Doe v. Fournier, 851 F.Sup.2d at 221. Plaintiffs argue that the Town’s failure to implement adequate sexual harassment policies, and to train its employees regarding sexual harassment claims by students constitutes a violation of §1983. See Canton v. Harris, 489 U.S. 378, 388-89 (1989) (City can be liable under §1983 for inadequate training of its employees). For the Town to be liable for failure to train, there must be evidence that the Town’s policies, prac *141 tices or customs relative to sexual harassment training reflect that the Town was deliberately indifferent to the rights of its students. See DiRico v. Quincy, 404 F.3d 464, 469 n.12 (1st Cir. 2005); Doe v. Fournier, 851 F.Sup.2d at 221.
The parties disagree as to whether the Town had adequate sexual harassment policies in place at the time Mary alleges she was sexually harassed by Howard. Plaintiffs point to the fact that the Town did not have any sexual harassment policies in place dealing specifically with students in 2009-2010, the school year Maiy alleges she was sexually harassed by Howard. The sexual harassment policy in effect then was dated 1992 and only addressed employee-on-employee harassment. The absence of a current and relevant policy can be the basis for a §1983 claim. See Bordanaro v. McLeod, 871 F.2d 1151, 1159 (1st Cir. 1989). Plaintiffs also point to evidence that the written policies in place at the time were confusing, not known to many key administrators and not followed. While there was a Civil Rights Administrator, Superintendent Phelan and others did not even know who that person was or understand her role. The evidence in the summary judgment record regarding the deficiencies in the sexual harassment policies and training, if proven, is sufficient for liability to attach. See Canton, 489 U.S. at 390 (A section 1983 claim exists where “the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need”). Accordingly, the Town’s motion for summary judgment on Count 5 is DENIED.
D. Negligence (Counts 7, 8 and 11)
The Town next moves for summary judgment on the negligence claims, which include negligence (Count 7), negligent hiring, supervision, training and retention (Count 8), and negligent infliction of emotional distress (Count 11). It argues that the Town cannot be liable for negligence under the Massachusetts Tort Claims Act (“MTCA”) because § 10(c) of the MTCA bars recovery for intentional torts, and §10(j) bars recovery under circumstances where the Town is not the “original cause” of the harmful condition or situation.
Public employers are not liable for their employees’ intentional torts. If the Plaintiffs were seeking to hold the Town specifically liable for the alleged sexual misconduct of Howard, the claims would be barred by section 10(c). M.G.L.c. 258, §10(c); Swanset Dev. v. Taunton, 423 Mass. 390, 397 (1996). However, Counts 7, 8 and 11 of the Verified Complaint speak of the negligence of the Town’s employees, not the intentional acts of Howard. Therefore, section 10(c) is inapplicable. On the other hand, to the extent that Plaintiffs are contending that the Town is liable for failing to adopt appropriate sexual harassment policies or for negligently supervising, training or retaining Howard, the claims are barred by section 10(j).[6]
A public employer is not liable under the MTCA for “any claim based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer.” G.L c. 258, §10(j). The term “originally caused” refers to “an affirmative act (not a failure to act) by a public employer that creates the condition or situation” resulting in harm inflicted by a third party. Shapiro v. Worcester, 464 Mass. 261, 272 (2013); Kent v. Commonwealth, 437 Mass. 312, 318 (2002). “In order for a public employer’s affirmative act to be the ‘original cause’ of a ‘condition or situation’ that results in harmful consequences to another from the ‘violent or tortious conduct of a third person’ . . . the act must have materially contributed to creating the specific ‘condition or situation’ that resulted in the harm.” Kent, 437 Mass. at 319.
Negligent failure to adopt policies to protect others, including students at a school, is not actionable under the MTCA because the Town is not the original cause of the condition that led to the harm. See Brum v. Dartmouth, 428 Mass. 684, 687 (1999). In Brum a mother sued several municipal entities under the MTCA after her son was stabbed to death at the local high school. Id. at 686. She contended that the school failed to adopt and implement school security policies and failed to apprehend the perpetrator after they learned of his intent to injure her son. Id. at 687. The Supreme Judicial Court held that section 10(j) barred claims for injuries arising out of a school’s failure to adopt and maintain adequate security measures and protect students from known threats. See id. at 696. Thus, Plaintiffs’ claim that the Town was negligent for not adopting better sexual harassment policies, is barred by the MTCA.
Moreover, Massachusetts state courts have routinely held that a public employer is not liable under the MTCA for allegations of negligence resulting from failing to supervise or take other remedial action to prevent the ultimate harm. See. e.g., Cormier v. Lynn, 91 Mass.App.Ct. 1101, *3 (2017) (Rule 1:28 decision) (student pushed down stairs by classmate); DeJesus v. Worcester, 84 Mass.App.Ct. 1111, *1-2 (20130 (Rule 1:28 decision) (child fell in playground while being supervised by school employee); Moore v. Billerica, 83 Mass.App.Ct. 729, 732-34 (2013) (child hit by baseball in town park); Connors v. Pembroke, 81 Mass.App.Ct. 1114, *1 (2012) (Rule 1:28 decision) (spectator at high school football game struck by helmet of a player forced out of bound); Bernard v. Cambridge, 78 Mass.App.Ct. 1122, *2 (2011) (Rule 1:28 decision) (three-year-old child who attended a city-run preschool fell at a playground); Anzalone v. Middleton, 73 Mass.App.Ct. 1105, *2 (2008) (Rule 1:28 decision) (bowling pin struck plaintiffs eye in gym class). Therefore, the Town cannot be held liable for failing to *142 prevent Howard’s alleged sexual misconduct by better supervision or training. See Canty v. Old Rochester Reg’l School Dist., 54 F.Sup.2d 66, 70-71 (D.Mass. 1999) (MTCA bars claims against School District for negligent failure to “prevent or diminish” the sexual misconduct of athletic coach); Armstrong v. Lamy, 938 F.Sup. 1018, 1043-44 (D.Mass. 1996) (MTCA bars claims against municipality for failure to protect a student from a teacher’s sexual misconduct, and train, supervise, regulate, control or correct the teacher). Defendants’ motion for summary judgment on Counts 7,8 and 11 is ALLOWED.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Town’s Motion for Summary Judgment is DENIED as to Counts 2, 3,4. Defendants Lynch, Webster and Meehan, and the Town’s Motion for Summary Judgment as to Count 5 is DENIED. Defendant Phelan’s Motion for Summary Judgment on Count 5 is ALLOWED. The Town’s Motion for Summary Judgment as to Counts 7, 8, 11 and 15 is ALLOWED.

 This court must view the facts in the light most favorable to the nonmoving party. See Premier Capital LLC v. KMZ, 464 Mass. 467, 474-75 (2013).

 he investigative report that was done in April-June 2010 reflected that he was told three times to stop touching students, twice by Meehan and once by Webster.

 Even if the court were to apply the Title IX deliberate indifference standard, it would find that Plaintiffs have established that there are genuine issues of material fact as to whether the Town acted with deliberate indifference, and therefore, summary judgment would be denied regardless. See infra at 10.

 See, e.g., Doe v. Sch. Admin. Dist No. 19, 66 F.Sup.2d 57, 64 (D.Me. 1999) (allegation that teacher was having a sexual relationship with a student reported to principal); Chancellor v. Pottsgrove Sch. Dist., 501 F.Sup.2d 695, 708-09 (E.D.Pa. 2007) (same); Gordon ex rel. Gordon v. Ottumwa Cmty. Sch. Dist., 115 F.Sup.2d 1077, 1082 (S.D. Iowa 2000) (allegation that teacher’s aide hugged, kissed, and patted the buttocks of student reported to principal); Zamora v. N. Salem Cent Sch.. Dist., 414 F.Sup.2d 418, 422 (S.D.N.Y. 2006) (multiple reports that teacher had previously groped students reported to principal and superintendent); Tesoriero v. Syosset Central Sch. Dist., 382 F.Sup.2d 387, 398 (E.D.N.Y. 2005) (principal received credible report that another teacher at the school had observed a student and teacher interacting in a manner suggesting romantic involvement and had seen an inappropriate letter from the offending teacher to the student).

 Additionally, Defendant Meehan contends that he cannot be liable because Howard was not subordinate to him. However, Plaintiffs point out that the Student Handbook identifies Meehan as a school official to whom harassment may be reported. Meehan was also a member of the school’s Behavioral Health Team and Administrative Team. Lynch also testified that guidance counselors were above teachers in the school hierarchy and that Meehan had the authority to confront and warn teachers about reports of sexual harassment, in fact, there is evidence in the record that in response to at least one complaint, Meehan instructed Howard to stop touching female students.

 The Verified Complaint alleges negligent hiring in addition to negligent supervision, training and retention, but there is no evidence that the Town had any information that Howard had engaged in any sexual harassment prior to hiring him, and therefore, there is no viable negligent hiring claim.