NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-685

ALAN WEINSHEL

vs.

SOUTHCOAST PHYSICIANS GROUP, INC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Alan Weinshel, appeals from the award of summary judgment to the defendant, Southcoast Physicians Group, Inc. (SPG), concerning the plaintiff's claim of breach of contract on a successor liability theory.  On appeal, the plaintiff claims the motion judge erred by finding as a matter of law that SPG was not a successor-in-interest to New Bedford Medical Associates, P.C. (NBMA).  We affirm.

Discussion.  We review the allowance of a motion for summary judgment de novo.  See Williams v. Stewart Health Care Sys. LLC, 480 Mass. 286, 290 (2018).  Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to a judgment as a matter of law.  See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  We view the facts in the light most favorable to the

nonmoving party.  See Premier Capital, LLC, v. KMZ, Inc., 464

Mass. 467, 474-475 (2012).

This dispute arises from SPG's purchase of NBMA in 2014.

In anticipation of the acquisition, the plaintiff ended his

employment with NBMA and executed a Separation Agreement and

Medical Records Custody Agreement (agreements).  Under the

agreements, NBMA would release medical records to the plaintiff

for any patient that elected to be treated by him at his new

practice.  The plaintiff claimed the patient records he received

pursuant to the agreements were insufficient and filed suit

against SPG in 2019, claiming SPG was liable as a successor to

NBMA for failing to provide adequate records.  The judge found

no basis for successor liability and allowed SPG's motion for

summary judgment.

The plaintiff claims the motion judge erred by determining

that SPG was not a successor-in-interest to NBMA.  Our law

generally does not impose a predecessor's liabilities on a

successor unless "(1) the successor expressly or impliedly

assumes liability of the predecessor, (2) the transaction is a

de facto merger or consolidation, (3) the successor is a mere

continuation of the predecessor, or (4) the transaction is a

fraudulent effort to avoid [the] liabilities of the

predecessor."  Milliken & Co., v. Duro Textiles, LLC, 451 Mass.

547, 556 (2008), quoting Guzman v. MRM/Elgin, 409 Mass. 563, 566

2

(1991).  The plaintiff claims on appeal that SPG should be

liable under the de facto merger exception.[1]

We consider four factors to determine whether a transaction

was a de facto merger:

> "[W]hether (1) there is a continuation of the enterprise of
> the seller corporation so that there is continuity of
> management, personnel, physical location, assets, and
> general business operations; whether (2) there is a
> continuity of shareholders which results from the
> purchasing corporation paying for the acquired assets with
> shares of its own stock, this stock ultimately coming to be
> held by the shareholders of the seller corporation so that
> they become a constituent part of the purchasing
> corporation; whether (3) the seller corporation ceases its
> ordinary business operations, liquidates, and dissolves as
> soon as legally and practically possible; and whether (4)
> the purchasing corporation assumes those obligations of the
> seller ordinarily necessary for the uninterrupted
> continuation of normal business operations of the seller
> corporation."

Cargill, Inc., v. Beaver Coal & Oil Co., 424 Mass. 356, 360

(1997).  While no single factor is necessary or sufficient,

courts pay particular attention to the continuation of

management, officers, directors, and shareholders.  See id.  The

focus of the de facto merger analysis is "whether one company

has become another for the purpose of eliminating its corporate

debt."  See Milliken, 451 Mass. at 556.

To establish the first factor, the plaintiff was required

to show that there was continuation of enterprise, mainly

---

[1] The motion judge found none of the other exceptions applicable
and the plaintiff raises no claim relative to them on appeal.

3

through continuity of operational management. See Cargill, 424 Mass. at 360. Nine of NBMA's executive leaders, who were also shareholders, became employees of SPG. However, none of the NBMA executives retained their management titles or roles at SPG, except one who transitioned from chief financial officer at NBMA to director of business operations at SPG. The lack of continuity of management and direction from the NBMA officers after the acquisition weighs heavily against the application of this factor. Contrast Cargill, supra at 360-361 (holding buyer corporation was successor where employees and managers all maintained their same positions).

Continuity of personnel, physical location, assets, and general business operations may also indicate continuation of enterprise. See Cargill, 424 Mass. at 360. SPG acquired NMBA's assets, including equipment, phone numbers, name, and patient medical records, and continued to provide medical services at NBMA's physical location.[2] There was therefore some degree of operational continuity. See id. at 360-61 (successor company

---

[2] The assets SPG acquired included the patient medical records the plaintiff sought. However, it was undisputed that under the NBMA-SPG Asset Purchase Agreement (APA), NBMA retained its liabilities under any contract not specifically assigned to SPG, including its agreements with the plaintiff. The APA also provided that NBMA would have reasonable access to patient records for seven years after closing. These provisions indicate that although SPG acquired NBMA's patient records, the APA authorized NBMA to retrieve and transfer records to the plaintiff under the agreements.

4

used same name, telephone numbers, trucks, and equipment as predecessor).  However, as the motion judge found, an asset transfer without continuity of management is more akin to a corporate acquisition than a merger.  See Aldrich v. ADD Inc., 437 Mass. 213, 219 (2002) ("mere purchase of an asset does not make the purchaser the 'successor' of the seller, bound by the seller's contractual obligations with other parties"); Martignetti Grocery Co. v. Alcoholic Beverages Control Commission, 96 Mass. App. Ct. 729, 734 (2019) (de facto merger is "in essence a continuation of the predecessor's operations"). This factor is therefore not satisfied.

The second factor, continuity of shareholders, is present when the purchasing corporation exchanges its own stock as consideration for the predecessor's assets.  See Cargill, 424 Mass. at 360.  Here, SPG did not pay for NBMA's assets with shares of its own stock and none of NBMA's physician-owner shareholders received any stock in SPG.  Contrast id. at 358, 361 (sole shareholder of predecessor became director and shareholder with 12.5 percent interest in successor).  This factor therefore does not apply.

The third factor is satisfied if the seller entity ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practicably possible.  See Cargill, 424 Mass. at 360.  The lack of formal dissolution of a company does

5

not preclude the finding of a de facto merger because successor liability can be imposed where a corporation ceases all of its ordinary business operations but continues to exist solely as a legal entity.  See Milliken, 451 Mass. at 558.  In Milliken, for example, the court reasoned that the predecessor corporation fundamentally ceased to exist even though it never dissolved, because it no longer had offices, employees, or operations. id. at 558-559.  Here, NBMA stopped seeing patients when SPG acquired it, but it maintained its corporate status for two years to wind down the business.  SPG agreed to make employees available to NBMA at NBMA's expense during that period, and NBMA performed some corporate functions, including sending patient records to the plaintiff, albeit in an unsatisfactory form.  These facts are sufficiently distinct from Milliken to justify a different result.  See Milliken, 451 Mass. at 559.  Accordingly, the third factor does not apply in this case.

Lastly, under continuity of operations, we consider whether the purchasing entity took steps to ensure continuation of the seller's business.  See Cargill, 424 Mass. at 362.  SPG does not dispute that it continued the enterprise of NBMA by providing medical services to some of NBMA's patients.  As noted above, SPG also acquired most of NBMA's assets and retained some of its employees.  See id. (successor functioned in same manner as

predecessor with same employees, product, and services).  This last factor is therefore satisfied.

Balancing the four factors, however, the lack of continuity of ownership and control outweighs the single applicable factor of operational continuity.  See Cargill, 424 Mass. at 360 (highlighting importance of continuation of management and shareholders).  The motion judge properly determined that the acquisition was not a de facto merger and SPG was not subject to successor liability.[3]

Judgment affirmed.

By the Court (Meade,
  Desmond & Hand, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  April 13, 2023.

---

[3] The plaintiff claims, for the first time on appeal, that the court should impose successor liability because of the equitable nature of the doctrine or by recognizing "continuity of enterprise" without the transfer of ownership.  "An issue not raised or argued below may not be argued for the first time on appeal."  Century Fire & Marine Ins. Corp. v. Bank of New England-Bristol County, N.A., 405 Mass. 420, 421 n.2 (1989).  Accordingly, these claims are waived.

[4] The panelists are listed in order of seniority.