JANE KELLEY *vs.* DONALD B. NEILSON, executor.[1]

Middlesex. December 6, 2000. - April 13, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Devise and Legacy,* Real property, Ademption, Specific legacy. *Real Property,* Ownership, Purchase and sale agreement.

Where the owner of residential real estate executed a purchase and sale agreement with respect to the property that, when the owner died before the conveyance, was enforceable by virtue of G. L. c. 204, § 1; where the owner had executed a valid quitclaim deed and an attendant power of attorney to effect the sale; and where the intended sale was thus consummated after the owner's death, the specific devises with respect to the property in the owner's will were adeemed. [710-716]

CIVIL ACTION commenced in the Middlesex Division of the Probate and Family Court Department on March 24, 1997.

The case was heard by *Judith Nelson Dilday,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joseph Melone* for the defendant.

*Paul R. Chomko (Donald J. Bertrand* with him) for the plaintiff.

MARSHALL, C.J. We decide in this case whether the execution of a purchase and sale agreement by a testatrix adeemed by extinction a specific devise of real property where the testatrix died before the real estate transaction was completed. We conclude that in the circumstances of this case it did.

The dispute concerns a two-family residential property located on Laurel Avenue in Waltham (Waltham property), previously owned by Aileen T. Neilson (testatrix). The property has been sold. The defendant, the son and executor of the testatrix, and the plaintiff, granddaughter of the testatrix, each claim

---

[1] Of the estate of Aileen T. Neilson, and individually.

the right to all of the proceeds from that sale. The plaintiff filed a complaint in the Probate and Family Court seeking an order directing the defendant to relinquish the proceeds to her. The defendant moved for summary judgment, arguing that the devise of the Waltham property had been adeemed by the sale; the plaintiff filed a cross motion for summary judgment. A judge in the Probate and Family Court dismissed the complaint and entered summary judgment for the defendant, and the plaintiff appealed.

The Appeals Court reversed, holding that the devise to the plaintiff had not been adeemed because the property was "in existence and owned" by the testatrix at the time of her death, and that the plaintiff was entitled to the net proceeds of the sale. *Kelley* v. *Neilson*, 49 Mass. App. Ct. 115, 118 (2000). The defendant filed a petition for rehearing in which he claimed that the Appeals Court had failed to consider and to value a life estate in the Waltham property that the testatrix had devised to him. The Appeals Court issued an order modifying its opinion, the effect of which was to remand the case to the Probate and Family Court for further consideration of the defendant's claim to a life estate. We granted the defendant's application for further appellate review.

1. We summarize the relevant and undisputed material facts. See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989); Mass. R. Civ. P. 56, 365 Mass. 824 (1974). In September, 1991, the testatrix deeded to the defendant her interest in the Waltham property. Approximately one year later, the defendant deeded the property back to her.[2]

On January 5, 1993, the testatrix executed her last will. Under the terms of the will she made several specific monetary bequests.[3] With respect to the Waltham property that she owned and in which she apparently resided at the time, the testatrix devised the property to the plaintiff, subject to substantial

---

[2]The defendant asserts that, at the time, he was experiencing financial difficulties and deeded the property back to his mother to place it beyond the reach of his creditors. There is no record support for these claims, and we do not consider them. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[3]She bequeathed $5,000 to each of two granddaughters — the plaintiff in this action and a second granddaughter, the ultimate purchaser of the Waltham

restrictions that benefited the defendant and his wife. Specifi-
cally, the will provided that the defendant and his wife would
have the absolute right during their respective lifetimes to oc-
cupy one of the two Waltham property apartments, and restricted
the plaintiff from selling the Waltham property while either the
defendant or his wife did so. The will further required the
plaintiff to provide the defendant and his wife with the net
proceeds from the rental of the second apartment, regardless of
whether the defendant or his wife continued to occupy the other
apartment.[4] In short, while the testatrix devised the Waltham
property to the plaintiff, she did not have the right to benefit
economically from it while the defendant and his wife chose to
reside there.

Finally, under the terms of her will, the testatrix bequeathed
to the defendant all her personal property, including "bank ac-
counts, securities, automobile, and the contents of [her]
residential home." She also appointed him to serve as the execu-

---

property — and $1,000 each to a third granddaughter and a granddaughter-in-
law. It appears that the plaintiff is the daughter of the defendant.

[4]Clause Five of the will, setting forth these restrictions, provides that:

"(a) In the event that at the time of death, [the defendant] and his wife . . .
be the occupants of one of the two apartments in my house or should he
decide after my death to so occupy an apartment, then he and his wife shall
have the first priority of occupancy during his lifetime and that of his wife
. . . . However such apartment as he and [his wife] do not occupy shall be
rented at prevailing rental rates by [the plaintiff]. In such a case she shall first
set aside necessary monies to cover municipal taxes and water/sewer charges
as well as for necessary and required repairs, capital outlays and management
expenses. This to be done after careful consideration and in a business-like
manner. Such monies as remain after making the foregoing deductions from
the monthly rent shall be given to [the defendant] and his wife . . . while
they jointly or singularly occupy their apartment. This privilege to exist as
long as [the defendant] and his wife . . . live and as long as [she] does not
remarry.

"(b) I direct that [the plaintiff] is not to transfer or sell the real property that
I am devising to her at 18-20 Laurel Avenue in Waltham while [the defendant]
and his wife . . . shall occupy an apartment at the said location. However
should it be they [are] no longer occupants of the same, she may exercise her
rights of ownership without restriction.

"(c) I further direct that in the event that [the defendant] and his wife . . .
while living should end their occupancy of their apartment and move
elsewhere, that they shall continue to receive the net monthly rent from the
apartment that they had not occupied as long as they shall live, or the house is
not sold or transferred by [the plaintiff]."

tor of her will, with the "full power and authority, without need of a license from the Probate Court of jurisdiction, to sell, mortgage, rent, lease, and manage [her] real and personal property."

On November 28, 1995, nearly three years after she executed her last will, the testatrix signed a purchase and sale agreement for the sale of the Waltham property to another granddaughter, Bonnie Neilson, and Sean B. Lane (buyers), for the sum of $169,000.[5] The agreement provided that the closing would take place on January 16, 1996. On November 30, 1995, the testatrix took all steps necessary on her part to effect the sale: she executed a quitclaim deed, as well as a special limited power of attorney in favor of her attorney, David L. Mitchell, authorizing him "to do all things necessary with respect [to] the sale" of the Waltham property.[6]

On January 16, 1996, Mitchell, acting as authorized on behalf of the testatrix, agreed to extend the time of performance for the closing until January 30, 1996.[7] The testatrix died four days later on January 20, 1996, ten days before the scheduled closing. It is undisputed that by the rescheduled closing date the buyers were ready, willing, and able to complete the sale transaction.

The death of the testatrix placed a cloud on the title of the Waltham property. On January 30, 1996, the date on which the closing had been rescheduled to take place, the attorney for the

---

[5]There is no claim by the plaintiff that the purchase and sale agreement executed by the testatrix was invalid in any respect. The sale appears to have been negotiated through a commercial real estate broker, as the purchase and sale agreement provides that a specifically named broker would receive five per cent of the selling price.

[6]The plaintiff's brief states that the deed signed by the testatrix was placed in escrow, but there is nothing in the record to support that assertion. As the Appeals Court noted, "[g]iven the circumstances . . . it is likely that the testatrix delivered the deed to her attorney, Mitchell, on November 30, 1995, in the expectation that the deed would be available for the closing on January 16, 1996." *Kelley* v. *Neilson*, 49 Mass. App. Ct. 115, 116 n.3 (2000).

[7]While there is nothing explicit in the record to explain the reason for the extension, the purchase and sale agreement contained a standard mortgage contingency clause. The record contains a copy of a mortgage loan to the buyers that was approved on January 23, 1996. We glean from this that the closing date was extended to permit the buyers additional time to obtain mortgage financing, which they did within the time provided in the purchase and sale agreement.

buyers requested an extension to February 29, 1996, explaining that "the Seller had been unable to deliver clear title." The buyers' attorney pointed to the provision in the purchase and sale agreement that provided the seller with the power to extend the closing date to remove any defects in the title. On January 30, 1996, Mitchell, now acting as attorney for the estate of the testatrix,[8] agreed to extend the closing date until February 29, 1996. The agreement was further extended twice, and the Waltham property was conveyed to the buyers on May 22, 1996.

2. The plaintiff argues that, as the devisee of a specific devise of real estate under the testatrix's will, she is entitled to all proceeds from the sale of the Waltham property consummated after the death of the testatrix.[9] A specific legacy is one that "separates and distinguishes the property bequeathed from the other property of the testator, so that it can be identified." *Tomlinson* v. *Bury*, 145 Mass. 346, 347 (1887). See Restatement (Third) of Property (Wills and Other Donative Transfers) § 5.1(b) and comment b, at 346 (1999). "The distinctive characteristic

---

[8]Mitchell's authority to act as the representative for the testatrix expired on her death. See *Turner* v. *Minasian*, 358 Mass. 425, 427 (1970); *Gallup* v. *Barton*, 313 Mass. 379, 381 (1943).

[9]The plaintiff argues that there was an issue of material fact as to whether the Waltham property was sold pursuant to the purchase and sale agreement or any valid extension thereof, suggesting that the extensions agreed to by Mitchell before and after the testatrix died were invalid. In the Probate and Family Court, counsel for the plaintiff argued at the hearing on the cross motions for summary judgment that "[t]here's no appointment[] [of] an executor to April 2, 1996, so any contract or extension granted by [the testatrix's attorney] was completely . . . (inaudible)." This is the sole, fleeting reference in the record by the plaintiff that the defendant was not authorized to act as executor when the purchase and sale agreement was extended beyond February 29, 1996. There is nothing in the record to establish whether the defendant was appointed as temporary administrator. See G. L. c. 193, § 7A. The plaintiff submitted no affidavits or other evidence to support any challenge to the authority of the executor or the testatrix's attorney to extend the agreement sufficient to defeat a motion for summary judgment. See *LaLonde* v. *Eissner*, 405 Mass. 207, 209-210 (1989); Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). To the extent the plaintiff's vague references can be interpreted as a challenge to the authority of the executor, they do not constitute adequate appellate argument and are waived. *Tobin* v. *Commissioner of Banks*, 377 Mass. 909 (1979). *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958). See Mass. R. A. P. 16 (a)(4), as amended, 367 Mass. 921 (1975).

of such a legacy is its liability to ademption or extinction." *Moffatt* v. *Heon*, 242 Mass. 201, 203 (1922).

It is settled law in this Commonwealth that a specific legacy or devise is adeemed when a testator, during her lifetime, disposes of the subject of the specific legacy. *Walsh* v. *Gillespie*, 338 Mass. 278, 280 (1959), quoting *Richards* v. *Humphreys*, 15 Pick. 133, 135 (1833). The doctrine of ademption "seeks to give effect to a testator's probable intent by presuming he intended to extinguish a specific gift of property when he disposed of that property prior to his death." *Wasserman* v. *Cohen*, 414 Mass. 172, 174 (1993).

To determine whether a devise has been adeemed, we, along with the "great weight of modern authority," have adhered to the "identity" theory of ademption and "ordinarily look[] only to the existence or nonexistence of the subject matter of the specific legacy."[10] *Walsh* v. *Gillespie*, *supra* at 280. We have "focused on the actual existence or nonexistence" of the bequeathed property at the time of the testator's death, "and not on the intent of the testator with respect to it." *Bostwick* v. *Hurstel*, 364 Mass. 282, 295 (1973). See *Walsh* v. *Gillespie*, *supra* at 279-280, and cases cited. We have also recognized that a bequest of specific property

> "can only be satisfied by the thing bequeathed; if that has no existence, when the bequest would otherwise become operative, the legacy has no effect. If the testator subsequently parts with the property, even if he exchanges it for other property or purchases other property with the proceeds, the legatee has no claim on the estate for the value of his legacy. The legacy is adeemed by the act of the testator."

---

[10]A second approach developed at common law is the "intent" theory of ademption, which permits consideration of the testator's intent in determining whether a devise has been adeemed. See Paulus, Ademption by Extinction: Smiting Lord Thurlow's Ghost, 2 Tex. Tech L. Rev. 195, 196 (1971). Under that theory, if the devised property is not in the testator's estate at the time of death the devise fails "unless the evidence establishes that failure would be inconsistent with the testator's intent." Restatement (Third) of Property (Wills and Other Donative Transfers) § 5.2 comment b, at 349 (1999). The Restatement adopts the "intent" theory, believing that it provides a "more candid analysis" of ademption questions. *Id.*

*Bostwick* v. *Hurstel, supra,* quoting *Tomlinson* v. *Bury,* 145 Mass. 346, 347-348 (1887).

Nevertheless, we have on occasion departed from a rigid application of the "identity" rule where the rule would yield a harsh and unjust result and "would result in a disruption of the dispositive scheme of the testatrix because of wholly fortuitous circumstances beyond her control." *Walsh* v. *Gillespie, supra* at 282-283. See *Bostwick* v. *Hurstel, supra.* In *Walsh* v. *Gillespie, supra,* for example, we held for just those reasons that the sale by a conservator, just after his appointment and six weeks before the testatrix's death, of one-half of the shares of stock bequeathed in her will did not operate as an ademption of the specific bequest as to the unexpended balance of the proceeds remaining in the conservator's hands at the testatrix's death. The sale of the stock, the largest asset of the estate, had been necessary for the testatrix's support. If adeemed, this asset would not have benefited "the principal objects of the testatrix's bounty," a result we declined to sanction. *Id.* at 283.

For similar reasons we held in *Bostwick* v. *Hurstel, supra,* that a bequest of specific shares of stock was not adeemed even though the testatrix did not have continuous ownership of the shares of stock after she executed her will. *Id.* at 295-296. We held that there were sufficiently compelling circumstances to conclude that a specific legacy had not been adeemed where the testatrix had ample shares for the gift at the time of her death. Cf. *BayBank Harvard Trust Co.* v. *Grant,* 23 Mass. App. Ct. 653 (1987).

A specific bequest "can only be satisfied by the thing bequeathed." *Bostwick* v. *Hurstel, supra* at 295, quoting *Tomlinson* v. *Bury, supra* at 347-348. In this case the testatrix made two specific devises concerning the Waltham property: a devise of title to the plaintiff and a devise of a life estate in the property to the defendant and his wife.[11] Neither bequest concerning the Waltham property can be satisfied by it: the property has been sold.

---

[11]While the Appeals Court correctly noted that the defendant raised the issue of his life estate in the property for the first time in his petition for a rehearing before that court, in considering whether a specific devise is adeemed we are required to interpret the will as a whole; we cannot limit our consideration to an isolated clause of the will. *Boston Safe Deposit & Trust*

The plaintiff incorrectly contends that her devise was not adeemed by the sale of the Waltham property because the purchase and sale agreement expired at the time of the testatrix's death, and that the closing extensions approved by Mitchell, as the attorney for the estate of the testatrix, were invalid because they were beyond the limited power of attorney granted to him by the testatrix.[12] General Laws c. 204, § 1,[13] authorizes a judge at the request of a buyer to order specific performance of a purchase and sale agreement entered into by a person before her death. The effect of this statute is to extend the time for performance beyond the death of the testatrix, in accordance with the terms of the purchase and sale agreement. The buyers could have petitioned the Probate and Family Court for specific performance of the purchase and sale agreement within its terms. Because the extension of the purchase and sale agreement by Mitchell on January 30 was contemplated by that agreement, a holding that the devise of real estate had not been adeemed in this case would be contrary to the legislative intent expressed in G. L. c. 204, to enforce written agreements for the conveyance of real estate and to let the conveyance have the like force and effect as if made by the testatrix. See *Lucier* v. *Williams*, 323 Mass. 458, 460 (1948).[14]

We have not previously considered whether a specific bequest

*Co.* v. *Boston Safe Deposit & Trust Co.*, 343 Mass. 695, 698 (1962), quoting *Knowlton* v. *Forbush*, 322 Mass. 703, 704 (1948).

[12]As we noted earlier, we do not consider in this case whether Mitchell was authorized to act as attorney for the estate, or whether the defendant acted appropriately as the executor. See note 9, *supra*. Although the plaintiff moved to restrain the defendant from disposing of the proceeds of the sale of the Waltham property approximately six months after she commenced this action and more than one year from the date that the property had been conveyed, there is nothing in the record that suggests that the plaintiff sought to enjoin the sale of the property, or has otherwise challenged the authority of the defendant to act as he did.

[13]General Laws c. 204, § 1, provides in relevant part: "If a person who has entered into a written agreement for the conveyance of real estate . . . dies . . . the probate court shall have jurisdiction in equity concurrent with the supreme judicial and superior courts to enforce specific performance of such agreement . . . upon a petition therefor by any person interested in the conveyance . . . which conveyance shall have like force and effect as if made by the person who agreed or was liable to convey."

[14]In her briefs the plaintiff makes no express reference to the life estate in the Waltham property devised to the defendant. In her opposition to the

of real estate is adeemed where the testatrix executes a purchase and sale agreement but dies before the transaction is completed.[15] That relatively straightforward question is more complex in this case because (1) there are differing interests in the property, namely title to the Waltham property, specifically devised to the plaintiff, and a life estate in the property, specifically devised to the defendant and his wife, and (2) by operation of law, G. L. c. 204, § 1, the time for performance of the purchase and sale agreement was extended beyond the testatrix's death, and the agreement could be specifically enforced by the buyers postmortem.[16]

In this case the testatrix took every step necessary on her part

defendant's application for further appellate review, she noted in cursory fashion and without supporting authority that the Appeals Court was correct not to consider the defendant's claim concerning the life estate as the Waltham property "was sold by the [d]efendant, as [e]xecutor. Therefore, no 'life interest' existed." She is correct that the sale of the Waltham property foreclosed the defendant and his wife from exercising their right to the life estate; that is the point.

[15]Courts from other jurisdictions considering this issue have reached different conclusions. Some have held that a devise of real estate was adeemed by the execution of a purchase and sale agreement, reasoning that under the doctrine of equitable conversion, the testator's interest in the land was converted from realty into personalty on execution of the agreement. See, e.g., *In re Dwyer's Estate*, 159 Cal. 664 (1911); *In re Estate of Krotzsch*, 60 Ill. 2d 342 (1975); *Righter v. First Reformed Church of Boonten*, 17 N.J. Super. 407 (1952); Miller *vs*. Matzinger, No. L-99-1072 (Ohio Ct. App. Jan. 14, 2000); *Newport Waterworks v. Sisson*, 18 R.I. 411 (1893). Others, applying the "intent" and not the "identity" theory, have held that the devise was not adeemed after concluding that the testator did not intend to adeem the gift. See, e.g., *Riddle v. Brooks*, 115 N.J. Eq. 1 (1933); *In re Dublin's Estate*, 375 Pa. 599 (1954); *In re Estate of Atkinson*, 19 Wis. 2d 272 (1963) (involving agreement to sell land on contract); *In re Lefebvre's Estate*, 100 Wis. 192 (1898). Several courts have held that a devise had not been adeemed on the basis of statutes that specifically provide that a contract for the sale of realty disposed of by a will does not adeem the testamentary disposition. See, e.g., *Phillips v. Phillips*, 213 Ala. 27 (1925); *McLane v. Chancey*, 211 Ark. 280 (1947); *In re Will of Call*, 65 Misc. 2d 751 (N.Y. Surr. Ct. 1970); *Shure v. Dahl*, 80 N.W.2d 825 (N.D. 1957); *Washington Escrow Co. v. McKinnon*, 40 Wash. 2d 432 (1952).

[16]We agree with the Appeals Court that, in Massachusetts, the doctrine of equitable conversion is not available to the defendant. See *Kelley v. Neilson*, 49 Mass. App. Ct. 115, 118 (2000). Massachusetts does not follow the view recognized in many States that, on the execution of a purchase and sale agreement, the purchaser is regarded as the equitable owner of real estate, entitled to receive the rents and profits from the property. See *Laurin v. DeCarolis*

to effect a sale of the Waltham property to a third party: in addition to the purchase and sale agreement, she executed a quitclaim deed, with an attendant power of attorney to her attorney to effect the sale. When consummated, the effect of her actions on her dispositive scheme would be to extinguish the specific devise of title to the Waltham property to the plaintiff, *and* to extinguish the specific devise of the life estate in the property to the defendant and his wife. For reasons beyond her control (the failure of the buyers to obtain mortgage financing by the time of the first closing date), the transfer was not effected before she died on January 20, 1996. See *Walsh* v. *Gillespie, supra* at 283. The closing, scheduled to take place on January 16, 1996, apparently was extended to accommodate the buyers' interest, rather than any interest of the testatrix. She (or her attorney acting on her behalf) could have declined to extend the closing date beyond January 16, in which event the purchase and sale agreement would have expired and the Waltham property would have remained in the estate and been disposed of in accordance with her will. But the testatrix (through her attorney) did agree to extend the closing date, and the purchase and sale agreement remained in effect and enforceable at the time of her death, including within its terms a standard provision affording the seller an opportunity to extend the time for performance to clear the title. See G. L. c. 204, § 1.[17]

It is apparent from the terms of the will alone, without

*Constr. Co.*, 372 Mass. 688, 690-691 (1977), and authorities cited; *Beal* v. *Attleborough Sav. Bank*, 248 Mass. 342, 344 (1924). In Massachusetts the seller continues to hold legal title to the property subject to an equitable obligation to convey on payment of the purchase price. See *Laurin* v. *DeCarolis Constr. Co., supra* at 691; *Barrell* v. *Britton*, 244 Mass. 273, 278-279 (1923). Unlike other States, our law provides that, when the parties specify a time for the completion of the sale, the conversion of interest takes place at that specified time — not the date that the parties execute the purchase and sale agreement. *Baker* v. *Commissioner of Corps. & Taxation*, 253 Mass. 130, 133-134 (1925).

[17]The plaintiff suggests that the defendant should not have authorized the sale after the death of the testatrix because, as the beneficiary of the testatrix's personal property, he stood to benefit from the sale. Because the plaintiff does no more than suggest there may be some impropriety on his part, we do not consider whether there was any conflict of interest between the defendant acting as executor authorizing the sale and the defendant as beneficiary under the will. *Tobin* v. *Commissioner of Banks*, 377 Mass. 709 (1979). *Lolos* v. *Berlin*,

considering the intent of the testatrix at the time she executed the purchase and sale agreement, that the dispositive scheme of this testatrix was not to give this plaintiff the full economic value of the Waltham property. As we described earlier, the plaintiff's economic interest in the real estate was substantially compromised by other terms of the testatrix's last will. If, however, we were to conclude that the Waltham property had *not* been adeemed and therefore that the proceeds of the sale must pass to the plaintiff, she would receive an unjust windfall, one that is contrary to the testatrix's scheme. See *Walsh* v. *Gillespie, supra* at 282. "It is highly doubtful that this is the ultimate result that the [testatrix] intended, [and] the unquestioned rule of construction in this jurisdiction is to give effect to the [testatrix's] intent where possible." *Bostwick* v. *Hurstel, supra* at 288, and cases cited.

For all of these reasons, we conclude that the sale of the Waltham property that occurred by operation of law pursuant to G. L. c. 204, § 1, based on the testatrix's execution of a purchase and sale agreement before her death, adeemed the specific devises set forth in Clause Five of the last will of the testatrix.[18]

*Judgment affirmed.*

---

338 Mass. 10, 14 (1958). See Mass. R. A. P. 16 (a) (4). This issue is deemed waived. *Tobin* v. *Commissioner of Banks, supra.*

[18]We express no opinion whether we would reach the same result if the buyers for any reason had failed to consummate the purchase and sale agreement.