DEBORAH ROSE & another[1] *vs.* EDWARD ROSE & others.[2]

No. 10-P-1889.

Norfolk. June 3, 2011. - September 26, 2011.

Present: GRAHAM, BROWN, & SIKORA, JJ.

*Real Property,* Partition. *Devise and Legacy,* Real property, Ademption, Specific legacy.

A judge of the Probate and Family Court correctly concluded that a specific bequest of certain real property was adeemed by actions taken by the testator before her death but after she had executed her will, where the actions (i.e., the testator's conveyance of a large portion of the property and then her combining of the remainder with another lot) resulted in a substantial change in the form of the real property at issue. [482-483]

PETITION filed in the Norfolk Division of the Probate and Family Court Department on November 12, 2009.

The case was heard by *John D. Casey*, J., on a motion for summary judgment.

*Daniel J. Finn, III,* for the plaintiffs.

*David J. Himmelberger* for the defendants.

BROWN, J. The narrow issue before us is whether a specific bequest of certain real property was adeemed by actions taken by the testator before her death but after she had executed her will. We conclude that there was a substantial change in the form of the real property at issue such that the Probate and Family Court judge's conclusion that the bequest had been adeemed is correct.

*Background.* On July 14, 1914, the testator, Mary Rose, purchased a certain lot of land in Wellesley (town) shown as lot

[1]Michelle Jones.

[2]Eileen Simoneon, Robert Rose, Barbara Sullivan, John Rose, Jr., Patricia Rose, Philip Rose, Russell Rose, Richard Rose, and Richard Willis.

7 on a plan of land recorded in Norfolk Country registry of deeds[3] (lot 7). Lot 7 fronted on Beck Street to the east. On October 19, 1932, Mary Rose purchased lot 8 as shown on the same plan, a corner lot that abuts lot 7 to the south and fronts on Beck Street to the east and McLean Street to the south, and extends westerly to abut on Hayden Place as well. The testator's home was situated on lot 7. A garage has been situated on lot 8, at least as of 1962.

On September 22, 1962, the testator executed her last will and testament. Article 7 of her will provided a life estate in the home on lot 7 for her daughter, Mary Elizabeth Willis. Article 6 of her will bequeathed lot 8 to her son, Richard Henry Rose, with the request that Richard allow Mary Elizabeth "to have the use of the garage situated on the land, free of charge so long as the said daughter occupies the house [on lot 7]." The residuary clause leaves fifteen percent of the remainder of her estate to each of her five sons, including Richard, and twenty-five percent to her daughter, Mary Elizabeth.

On February 8, 1965, the Land Court judge issued a decree registering lot 8, but not lot 7. In 1967, Mary Rose petitioned the town planning board (board) for a determination that a plan she desired to record dividing her land did not require approval under the subdivision control law. The plan reconfigures lots 7 and 8 and designates lot 7 as "lot A" containing 9,769 square feet and divides lot 8 into "lot 2," containing 9865 square feet and directly abutting lot A, and "lot 1," containing 20,883 square feet and located to the west of lot 2. The minimum area for a residential lot in 1967 in the town was 15,000 square feet. The application explains that the land is being divided into "three separate parcels, Lot 2 . . . to be added to Lot A . . . [and] leaving Lot 1 containing 20,883 sq. feet."

The board endorsed the plan with the notation that "[s]ince Lot 2 shall be added to Lot A, and shall not be used as an individual building lot, approval under the Subdivision Control Law not required." The plan was registered on October 23, 1967, and recorded in the Norfolk County registry of deeds. Since 1968, lot 2 and lot A have been assessed as one lot,

[3]Plan book 27, plan 1243.

known as 35 Burke Lane, containing 19,865 square feet. On May 8, 1969, Mary conveyed lot 1 on the 1967 plan to Anthony and Martha Glorioso.

Mary died on September 18, 1983, without changing her will. Through this action for partition, the plaintiffs, Richard's heirs, his two daughters, claim ownership under art. 6 of Mary's will of that portion of lot 8 that was not sold, i.e., lot 2 on the 1967 plan. On summary judgment, a judge of the Probate and Family Court determined that the gift to Richard of lot 8 was a specific bequest that was adeemed because lot 8 no longer existed after Mary Rose subdivided the property, sold a portion of lot 8, and combined the remaining portion with lot 7. The plaintiffs appeal.

*Discussion.* There is no dispute that the gift of lot 8 to Richard is a specific, rather than a general, bequest. "It is settled law in this Commonwealth that a specific legacy or devise is adeemed when a testator, during her lifetime, disposes of the subject of the specific legacy." *Kelley* v. *Neilson*, 433 Mass. 706, 711 (2001). A bequest of specific property

> "can only be satisfied by the thing bequeathed; if that has no existence, when the bequest would otherwise become operative, the legacy has no effect. If the testator subsequently parts with the property, even if he exchanges it for other property or purchases other property with the proceeds, the legatee has no claim on the estate for the value of his legacy. The legacy is adeemed by the act of the testator."

*Id.* at 711-712, quoting from *Bostwick* v. *Hurstel*, 364 Mass. 282, 295 (1973). "In other words, . . . any alteration in the estate after the making of the will, amounts to a revocation." *Moffatt* v. *Heon*, 242 Mass. 201, 204 (1922), quoting from *Ballard* v. *Carter*, 5 Pick. 112, 116 (1827).

While recognizing the foregoing, the plaintiffs point to the corollary long-standing general rule that where only part of the real property owned by the testator is conveyed during the lifetime of the testator, only a partial ademption results and the bequest is not adeemed as to the remaining portion. *Hawes* v. *Humphrey*, 9 Pick. 350, 360 (1830). They argue, therefore, that

only a partial ademption occurred when the testator divided her land, and because a portion of lot 8 is still contained in the estate and is separately identifiable on the 1967 plan and held under separate deed, there was no ademption. We disagree.

The testator, after executing her will, not only sold off a large portion of lot 8 causing an undisputed ademption of that portion of the specific bequest of art. 7 of the testator's will, but also voluntarily combined the remainder of lot 8 with the original lot 7. She caused a plan to be recorded which reconfigured lots 7 and 8 and specifically states that lot 2 (the portion of lot 2 at issue) shall be added to lot A (formerly lot 7). The two lots were thereafter assessed as one parcel by the town. The merger of lot 2 with lot A, therefore, arose from the affirmative acts of the testator; it was not the common-law doctrine of merger, see *Marinelli* v. *Board of Appeals of Stoughton*, 440 Mass. 255, 261 (2003), the provisions of the zoning act (G. L. c. 40A), or a local by-law that caused them to merge. In these circumstances, we conclude that the testator caused such a substantial change in the form of lot 8 by conveying a large portion of it and combining the remainder with the original lot 7, that the specific bequest was adeemed.

*Judgment affirmed.*