NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-998                                        Appeals Court


LISA SCARLETT  vs.  CITY OF BOSTON.


No. 17-P-998.

Suffolk.     March 5, 2018. - July 19, 2018.

Present:  Vuono, Hanlon, & Wendlandt, JJ.


Anti-Discrimination Law, Employment, Race.  Employment,
    Discrimination.  School and School Committee, Termination
    of employment.  Practice, Civil, Summary judgment.



    Civil action commenced in the Superior Court Department on
June 12, 2014.

    The case was heard by Robert L. Ullmann, J., on a motion
for summary judgment.


    Mitchell J. Notis for the plaintiff.
    Lena-Kate K. Ahern, Assistant Corporation Counsel, for the
defendant.


    WENDLANDT, J.  After the defendant Boston public school

department (BPS) declined to renew her employment contract to

work as a second grade teacher, the plaintiff, Lisa Scarlett,

brought an action in two counts, alleging, inter alia, that BPS

violated G. L. c. 151B, § 4, by discriminating against her on

the basis of her race (count I).  A Superior Court judge allowed BPS's motion for summary judgment and dismissed her complaint.  On appeal, we apply the familiar three-stage McDonnell Douglas paradigm for assessing an employer's motion for summary judgment with respect to an employee's claim of racial discrimination in the context of a work force reduction. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973).  See also Wheelock College v. Massachusetts Commn. Against Discrimination, 371 Mass. 130, 138 (1976).  Finding that Scarlett met her burden under this paradigm, we reverse the judgment as to count I.[1]

Background.  We briefly summarize the material facts in the light most favorable to the plaintiff, the nonmoving party, reserving additional facts for later discussion.  Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 35 (2005).  In November of 2009, Scarlett, a black woman of Jamaican descent, was hired as a full-time provisional teacher, teaching second grade in a general education classroom at the David A. Ellis elementary school (Ellis school), a school which is part of BPS. Provisional teachers are hired under one-year contracts.  Every spring, BPS issues "reasonable assurance letters" to provisional

_____

[1] The judge also granted summary judgment on Scarlett's claim of discrimination based on national origin (count II). Having raised no challenges to that portion of the judge's order, Scarlett has waived the issue.  See Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 35 n.1 (2005).

teachers whom it intends to retain for the following school year.[2] Scarlett received a reasonable assurance letter in the spring of 2010, and her contract was renewed for the 2010-2011 school year. Again, Scarlett taught second grade in a general education classroom.

In October of 2010, BPS entered into an interim settlement agreement with the civil rights divisions of the United States Departments of Justice and Education regarding services provided to "English Language Learner" (ELL) students. Pursuant to the settlement agreement, BPS agreed to provide ELL students with sheltered English immersion (SEI) programs in core content classes, and also to train and to hire a sufficient number of teachers to serve ELL students.[3] In order to adequately serve its diverse student body,[4] BPS began requiring its provisional

---

[2] In contrast, permanent teachers have additional job protections and do not need to be renewed on an annual basis.

[3] SEI classes utilize materials specifically tailored for ELL students, and incorporate English as a second language instruction into the classroom. In certain language-specific SEI classrooms, teachers also provide some instruction in the specified foreign language.

[4] In the 2011-2012 school year, the BPS student population was forty-two percent Hispanic, thirty-five percent black, thirteen percent white, eight percent Asian, and two percent other/multiracial. More than forty percent of BPS students spoke a language other than English as their first language, and approximately thirty percent of students had limited English proficiency.

teachers either to obtain English as a second language (ESL) certification or to attend ESL "category" trainings.[5]

In the 2010-2011 school year, the racial demographics of the student body and staff at the Ellis school were as follows:

|  | Student Body | Staff |
| --- | --- | --- |
| Hispanic | 61.4% | 28.2% |
| Black | 37.0 | 46.2 |
| White, Asian or other/multiracial | 1.5 | 23.1 (White) |
| Native American | 0 | 2.6 |

As previously indicated, Scarlett's race is black. Approximately forty percent of Ellis school students were ELL students.

In February of 2011, Norman Townsend became principal of the Ellis school, and shortly thereafter was informed that BPS faced a $63 million budget shortfall for the upcoming 2011-2012 school year. BPS was required, as a result, to reduce staff. The Ellis school was no exception; Townsend was forced to reduce the Ellis school staff, including some provisional teachers. In doing so, Townsend prioritized maintaining the services,

---

[5] Category trainings were provided by BPS to help nonESL-certified teachers quickly learn skills related to teaching ELL students. ESL certifications are exam based and are issued by the Massachusetts Department of Elementary and Secondary Education.

including the SEI program,[6] it was providing to its ELL students, many of whom required services in Spanish.

There were seven provisional teachers, including Scarlett, whose contracts were subject to nonrenewal in view of the budget shortfall:  two Hispanic SEI teachers (one was ESL certified and the other was not, but had majored in Spanish in college); three ESL certified white teachers (two of whom taught SEI classes and one of whom taught music); and two black teachers (Scarlett and a math specialist).  Scarlett and the math specialist both lacked SEI teaching experience, and the math teacher also lacked ESL certification.  Scarlett had been working on her ESL certification and received it on June 17, 2011, three days after BPS informed her that her contract would not be renewed for the 2011-2012 school year.

In connection with the annual "probable organization" meeting, during which BPS administration representatives met with leadership from the Ellis school to decide how properly to staff the school for the upcoming 2011-2012 school year, Townsend recommended that neither Scarlett nor the other black provisional teacher (the math specialist) be renewed.[7]  Scarlett

---

[6] The Ellis school had successfully implemented an award winning SEI program pursuant to the civil rights settlement agreement concerning ELL students.

[7] The staffing recommendations made by school principals at the probable organization meetings are normally followed.  Final

did not receive a reasonable assurance letter, and in June of 2011,[8] BPS informed Scarlett that, due to budget constraints, her contract would not be renewed for the 2011-2012 school year.[9] The math specialist also did not receive a reasonable assurance letter and was not renewed; his position was cut at the end of the 2010-2011 school year.[10]

Procedural history. Scarlett filed a complaint with the Massachusetts Commission Against Discrimination (MCAD), alleging that she was terminated because of her race or national origin in violation of G. L. c. 151B, § 4. MCAD dismissed the complaint for lack of probable cause. Scarlett then commenced the present civil action against BPS in Superior Court. Ruling on BPS's motion for summary judgment, the judge "assume[d] that Scarlett ha[d] made out a prima facie case of discrimination based on her race/color and national origin," but granted summary judgment in favor of BPS even though Scarlett had produced evidence that BPS had provided "inconsistent reasons"

decisions with regard to staffing are made by the BPS human resources department at the end of the school year.

[8] At the end of the 2010-2011 school year, approximately 445 provisional teachers throughout BPS received nonrenewal letters.

[9] As previously set forth, a few days later, Scarlett received an ESL certification.

[10] Two white provisional teachers who had received reasonable assurance letters based on Townsend's recommendation in February, 2011, received letters of nonrenewal in June, 2011, but were nonetheless renewed for the 2011-2012 school year.

for her termination.  In doing so, the judge reasoned that "the mere existence of evidence that in some contexts may support an inference of pretext does not defeat summary judgment, if no reasonable trier of fact could find discriminatory animus when all the evidence and reasonable inferences favorable to the plaintiff are considered."  This appeal followed.

Discussion.  We review the allowance of a motion for summary judgment de novo to determine whether the moving party has established that, viewing the evidence in the light most favorable to the opposing party, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680 (2016), quoting from Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 474 (2013).  See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002).  An employer seeking summary judgment in a discrimination case faces a high burden because "the question of the employer's state of mind (discriminatory motive) is elusive and rarely is established by other than circumstantial evidence."  Sullivan, 444 Mass. at 38 (quotation omitted).  Accordingly, summary judgment in such cases is "disfavored."  Ibid.

General Laws c. 151B, § 4, as amended by St. 1989, c. 516, § 4, provides, in pertinent part, that "[i]t shall be an unlawful practice . . . [f]or an employer . . . because of the

race [or] color . . . of any individual . . . to discharge from employment such individual . . . ." To survive summary judgment on claims brought under this provision, an employee alleging discrimination must produce evidence from which a reasonable jury may infer "four elements:  membership in a protected class, harm, discriminatory animus, and causation." Lipchitz v. Raytheon Co., 434 Mass. 493, 502 (2001).  Here, only the last two elements -- discriminatory animus and causation -- are in question.

Because direct evidence of these elements is rare, an employee may survive summary judgment by providing "indirect or circumstantial evidence [of these elements] using the familiar three-stage, burden-shifting paradigm [originally set forth] in McDonnell Douglas Corp. v. Green, 411 U.S. [at] 802-805," Bulwer, 473 Mass. at 681 (quotation omitted), and adopted by the Supreme Judicial Court in Wheelock College, 371 Mass. at 138. At the first stage of this paradigm, the employee must establish, by a preponderance of the evidence, a prima facie case of discrimination. Sullivan, 444 Mass. at 40.  In a "reduction in force case" such as the present case,[11] in order to meet this burden, the employee must produce evidence that (i)

_____

[11] Scarlett's position at oral argument that this was not a reduction in force case contradicts the parties' joint statement of undisputed material facts, in which Scarlett admitted that "[t]he Ellis School was experiencing a reduction in force for the 2011-2012 school year."

she is a member of a protected class; (ii) she performed her job at an acceptable level; (iii) she was terminated; and (iv) her layoff occurred in circumstances that raise a reasonable inference of unlawful discrimination.  Id. at 41, 45.  If the employee is successful at establishing a prima facie case, the burden shifts to the employer, at the second stage, to rebut the prima facie showing by "articulating a legitimate, nondiscriminatory reason for its employment decision."  Bulwer, 473 Mass. at 681 (quotation omitted).  "[A]n employer must not only give a lawful reason or reasons for its employment decision but also must produce credible evidence to show that the reason or reasons advanced were the real reasons."  Wheelock College, 371 Mass. at 138.  At the third stage, the burden of production shifts back to the employee to provide evidence that the employer's stated rationale for the termination is not true but a pretext.  Bulwer, 473 Mass. at 681.  As the moving party, the employer "has the burden of affirmatively demonstrating the absence of a genuine issue of material fact on every relevant issue, even if [it] would not have the burden on [the] issue [at] trial."  Sullivan, 444 Mass. at 39 (quotation omitted).

Here, Scarlett produced sufficient evidence under this framework to survive summary judgment.  Starting with the first

stage,[12] BPS does not dispute that Scarlett produced sufficient evidence under the first three prongs of the prima facie case. BPS, however, argues that Scarlett has failed to produce evidence to support a reasonable inference of unlawful discrimination under the fourth prong.[13]  We disagree.

"[E]vidence that a reduction in force has a disproportionate impact on members of a protected class sometimes may help establish a prima facie case of discrimination . . . ."  Sullivan, 444 Mass. at 46 n.16.  Here, Scarlett has come forward with evidence that, out of the seven provisional teachers whom Townsend considered when determining which teachers to cut to meet his reduced budget, two were black.  These two teachers were the only teachers who were not renewed.  This evidence is "sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff."  Id. at 44, quoting from Barnes v. GenCorp, Inc., 896 F.2d 1457, 1466 (6th Cir.), cert. denied, 498 U.S. 878 (1990).

---

[12] Although, on appeal, Scarlett's argument is limited to the judge's adverse finding at the third stage, BPS disputes the judge's assumption that Scarlett met her burden to establish a prima facie case of discrimination.  Accordingly, we begin our analysis here.

[13] The judge assumed, without deciding, that Scarlett had shown a prima facie case of racial discrimination.  Perhaps as a result, Scarlett does not expressly address her prima facie showing in her brief on appeal.

In so concluding, we are guided by the Supreme Judicial Court's admonition in Sullivan that the plaintiff's burden at this stage is "meant to be a small showing that is easily made." Sullivan, 444 Mass. at 45 (quotation omitted).  Indeed, in Sullivan, the court contemplated a hypothetical situation very similar to the present case, in which a hospital employed five nursing supervisors, four of whom were women.  In implementing a reduction in force, the hospital discharged only the male supervisor.  The court concluded that "[t]he fact that the hospital retained all women nursing supervisors and discharged the only man is sufficient, by itself, to raise a reasonable inference that the hospital selected the man for discharge because of his sex."  Id. at 44 n.14.  Similarly, here, the aforementioned evidence that BPS discharged the only two black provisional teachers at the Ellis school suffices to raise an inference of discriminatory animus sufficient for the small showing required at this first stage of the McDonnell Douglas paradigm.

BPS argues that this evidence is insufficient because the five provisional teachers who were renewed were not similarly situated to Scarlett; they each had skills and qualifications -- experience teaching SEI classes, ESL certification, or Spanish language fluency -- that Scarlett lacked.  This argument, however, ignores the court's statement in Sullivan that "[t]he

third stage [of the McDonnell Douglas paradigm] is the more appropriate stage for the employer to establish that the plaintiff's statistical evidence is unreliable or not probative of discrimination because the statistics do not account for factors pertinent to the employer's selection process." Sullivan, 444 Mass. at 46 n.16. See, e.g., Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129-134 (1997) (analyzing at third stage whether employees were similarly situated). Accordingly, the record supports a prima facie case of racial discrimination.

Moving to the second stage of the McDonnell Douglas paradigm, BPS articulated at least three different rationales for its decision not to renew Scarlett's contract. First, BPS cited performance issues in its MCAD position statement where it stated, inter alia, that "Townsend expressed some concerns with Ms. Scarlett's teaching performance" and that in "his opinion, her skills and performance were at issue." This performance rationale is echoed in a BPS human resources document generated around the time of the probable organization meeting,[14] and in a document BPS human resources sent by electronic mail message to

---

[14] Deborah Pullen, a BPS human resources department employee, testified in her deposition that this document would have been drafted around the time of the probable organization meeting, and that such a document was normally generated by the school's principal.

Townsend informing him that BPS had followed his recommendation not to renew Scarlett's contract.[15] Both of these documents include a chart in which "performance issues" is the reason listed for Scarlett's nonrenewal. Additionally, Townsend stated in his affidavit that he "had some concerns with Ms. Scarlett's teaching performance."

Second, BPS asserted that Scarlett was not renewed because she lacked ESL certification. Townsend testified that this was the only basis for his recommendation not to renew Scarlett's contract. Moreover, in an affidavit submitted by BPS in connection with its motion for summary judgment, Townsend explained that, "[w]ithout a staff of teachers with ESL licenses, it would cost more to hire additional staffers who are licensed to teach [ELLs]."

Finally, BPS indicated that Scarlett's contract was not renewed because she lacked Spanish speaking abilities. In its MCAD position statement, BPS stated, "[T]he ability to speak a language aside from English (namely, Spanish language) [is] an important job qualification." In his affidavit, Townsend

---

[15] Although Townsend testified that he was not sure who generated these documents, he stated that, in the winter or spring of 2011, a BPS human resources representative informed him that "performance issues" was the most appropriate language to enter on the document. Townsend testified that, by June of 2011, he could "justify" listing performance issues, even though he admitted that performance was not the real reason Scarlett was not renewed.

explained that each of the five provisional teachers whom he wished to retain at the Ellis school had Spanish speaking abilities. He stated, "Given the high number of students who speak Spanish at the Ellis [s]chool along with BPS's [a]cceleration [a]genda for ELLs during 2010-2011, I have been motivated to maintain a staff of teachers who speak Spanish." Scarlett speaks very little Spanish.

We turn then to the third stage of the McDonnell Douglas paradigm to determine whether Scarlett has come forward with evidence upon which a reasonable jury could rely to find that BPS's articulated rationales were a pretext. Here, Scarlett has met her burden. With regard to the performance rationale, BPS admitted that, at the time of the probable organization meeting in February of 2011, "Scarlett's work performance did not impact BPS's decision not to give her a letter of reasonable assurance." Similarly, Townsend, in his deposition, unequivocally stated that Scarlett's performance did not play any role in his nonrenewal decision. He testified that the documents listing "performance issues" as the reason that Scarlett was not renewed were not accurate. In addition, in February of 2011, Townsend had written about Scarlett that he "believe[d] she has a sound teaching foundation upon which to build a successful practice." These statements directly contradict BPS's MCAD position statement, Townsend's affidavit

in support thereof, and the internal BPS human resources documents, in which BPS explained that part of the rationale for not renewing Scarlett was her performance.[16]  This direct evidence that one of BPS's articulated rationales was false is sufficient to meet Scarlett's burden at the third stage.  See, e.g., Lipchitz, 434 Mass. at 506-507 (at trial, employee "was not required to disprove every reason articulated by the defendant or suggested in the evidence" and instead could meet her burden at the third stage "by persuading the fact finder that it was more likely than not that at least one reason was false").

Beyond the direct evidence that the performance rationale was false, Scarlett has come forward with evidence that calls into question the veracity of BPS's other articulated rationales.  Specifically, while Townsend testified that the

---

[16] Citing Chi-Sang Poon v. Massachusetts Inst. of Technology, 74 Mass. App. Ct. 185 (2009), BPS argues that the listing of "performance" as the reason that Scarlett was not renewed was merely poor record-keeping and not evidence of pretext.  We disagree.  Unlike the employee in Chi-Sang Poon, Scarlett's employment contract was not renewed.  Moreover, unlike in Chi-Sang Poon, Scarlett has shown BPS's "inconsistent and shifting explanations" for her nonrenewal.  Id. at 198. From this evidence, a jury could reasonably infer pretext.  Cf. id. at 198-199 (employer's poor record-keeping regarding reasons for decision to halt review of employee was insufficient evidence of pretext, where employee was not terminated and documentary evidence indisputably supported employer's explanation that employee had long history of personnel conflicts with subordinates and that its failure to record rationale was "a benevolent avoidance" of subject to protect employee).

sole reason he decided not to renew Scarlett was because she lacked ESL certification, the record shows that at least one of the provisional teachers whose contract was renewed also lacked the ESL certification.  In addition, while BPS stated that Scarlett was not renewed because she lacked critical Spanish speaking abilities, Townsend (who admitted he does not speak Spanish) testified that the only reason he believed that the teacher (who lacked ESL certification and was nevertheless renewed) spoke Spanish was that he overheard her speaking a language that he assumed to be Spanish.  He also could not recall whether he had any knowledge of Scarlett's Spanish skills.

On this record, Scarlett has produced evidence that BPS's "facially proper reasons given for its action against [her] were not the real reasons for that action."  Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 397 (2016) (quotation omitted).  Significantly, "Massachusetts is a pretext only jurisdiction."  Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 443 (1995).  Thus, at this third stage, the employee need only present evidence from which a reasonable jury could infer that the rationales advanced by the employer at the second stage were not the real reasons for

the adverse employment action.[17]  Bulwer, 473 Mass. at 682.

"[C]ombined with establishment of a prima facie case[,] a showing of pretext eliminates any legitimate explanation for the adverse hiring decision and warrants, but does not require, a determination that the plaintiff was the victim of unlawful discrimination."  Verdrager, 474 Mass. at 397 (quotation omitted).  Here, Scarlett has produced evidence that BPS provided at least one false rationale for her nonrenewal, as well as evidence from which a jury could infer that the remaining rationales proffered were also false.  Coupled with her prima facie showing, that was enough to survive summary judgment.

Conclusion.  So much of the judgment as dismisses count II of the complaint is affirmed.  In all other respects, the judgment is reversed.

So ordered.

---

[17] The judge erred in holding that Scarlett not only had to come forward with evidence of pretext, but also had to produce other "categories" of evidence directly suggestive of discriminatory animus.  See Bulwer, 473 Mass. at 681 (explaining that defendant employer's argument that plaintiff must produce specific evidence that pretext concealed discriminatory motive "overstate[d] the plaintiff's burden at the summary judgment stage because Massachusetts is a pretext only jurisdiction" [quotation omitted]).