POULOS vs. POULOS, 100 Mass. App. Ct. 40

 
 MARIANNE POULOS vs. PETER A. POULOS.

100 Mass. App. Ct. 40
 May 12, 2021 - July 15, 2021

Court Below: Probate and Family Court, Barnstable Division
Present: Green, C.J., Blake, & Kinder, JJ.

 

Trust, Assets of trust, Distribution, Irrevocable trust, Termination, Construction, Removal of trustee. Devise and Legacy, Ademption, Real property. Real Property, Partition. Uniform Trust Code. Probate Court, Trust. Practice, Civil, Summary judgment.

In a civil action seeking determination of the rightful owner of the proceeds from the sale of real property that had been held in trust and that had been sold as the result of a court-ordered partition, a Probate and Family Court judge erred in granting summary judgment in favor of the trustee, where the language of the declaration of trust and the quitclaim deed at issue clearly established that the trust was irrevocable and could not be terminated without the consent of all beneficiaries and permission of the court; and where the common-law doctrine of ademption by extinction did not apply. [43-45]

PETITION filed in the Barnstable Division of the Probate and Family Court Department on March 19, 2019.

 The case was heard by Arthur C. Ryley, J., on a motion for summary judgment.

Mark D. Carchidi for the plaintiff.

Frank J. Shealey for the defendant.

 KINDER, J. This is a dispute between Marianne Poulos and her father, Peter A. Poulos, over proceeds from the partition and sale of real property that Peter held in an irrevocable trust for Marianne's benefit. [Note 1] The question presented is whether the court-ordered partition and sale of the property extinguished Marianne's beneficial interest under the doctrine of ademption by extinction. A Probate and Family Court judge concluded that it did and allowed Peter's motion for summary judgment on that basis. Marianne's principal argument on appeal is that the doctrine of ademption by extinction does not apply in the circumstances here, where the trust was irrevocable and Peter took no action to dispose of the property. We agree and reverse the judgment.

 Page 41 

 Background. We summarize the undisputed material facts. Peter and Katheryne Snowden Poulos (Katheryne) were married in 1958. Together they had one child, Marianne. In 1966, Peter and Katheryne purchased the property at 48 Aunt Julia Ann Road in West Dennis (property) and took title as joint tenants. In 1973, Peter and Katheryne conveyed title to the property to Marianne, and Katheryne's children by a previous marriage, William C. Snowden, III, and Katheryne Lee Snowden. Peter and Katheryne were divorced in 1976. In 1978, Peter transferred his purported interest in the property to Socrates Mavodones. In the ensuing years, Marianne and Kathryne's other children filed multiple lawsuits against Peter and others who claimed title to the property.

 The lawsuits were settled in November 1987. Pursuant to a global settlement agreement, title to the property was deeded back to Peter and Katheryne as tenants in common. At the same time, Peter executed a declaration of trust which provided that he would hold his one-half interest in the property for the benefit of Marianne (trust). Peter and Katheryne also executed a quitclaim deed conveying a life estate in the property to Katheryne and conveying Peter's remainder interest in the property to Peter as trustee for the benefit of Marianne. The declaration of trust and the deed both provided that Peter would "hold the trust property exclusively for the benefit of the beneficiaries," with the trust terminating on the death of Peter or all beneficiaries, "whichever first occurs." Marianne and "her issue" were the only named beneficiaries. The declaration of trust further stated that Peter's interest in the property would pass in fee simple to Marianne's "heirs at law" if the trust terminated due to the death of the beneficiaries. If the trust was terminated by Peter's death, the declaration of trust provided that "the property shall pass in fee simple to Marianne." Finally, the declaration of trust prohibited Peter from selling or transferring the trust property without court permission. [Note 2], [Note 3]

 Page 42 

 In 2002, Katheryne granted a reverse mortgage on her interest in the property to Freedom Financial Senior Funding Corporation (Freedom Financial). Katheryne died in 2009. An assignee [Note 4] of the Freedom Financial mortgage brought a foreclosure action in 2017, which ultimately resulted in the foreclosure sale of Katheryne's interest in the property to Wilmington Savings Fund Society, FSB (Wilmington Savings). By virtue of the foreclosure deed, Wilmington Savings became a tenant in common with Peter.

 In 2017, Wilmington Savings brought an action in the Land Court against Peter, as trustee of the trust, seeking partition of the property. A Land Court judge allowed the request for partition and appointed a commissioner to sell the property and divide the proceeds. See G. L. c. 241, §§ 12, 31. In 2018, the commissioner sold the property for $1.3 million. Wilmington Savings was paid its share of the proceeds and the remaining proceeds were held in escrow by the commissioner.

 When Peter claimed ownership of the remaining proceeds after the property was sold, Marianne filed the underlying petition in the Probate and Family Court to remove Peter as trustee of the trust. Among other things, Marianne alleged that she had unsuccessfully sought accountings from Peter since 2010, and that Peter had not properly administered the trust. Before answering the petition, Peter filed a document titled "revocation of trust" in the Barnstable County registry of deeds and then filed a motion to dismiss the petition. After Peter's motion to dismiss was denied, he filed an answer to the petition and asserted a counterclaim seeking a judgment declaring that there was no trust or, in the alternative, that the trust was revocable.

 Peter then filed a motion for summary judgment, arguing that the trust had no assets after the partition and sale of the property. A Probate and Family Court judge allowed the motion, reasoning that "[s]ince the real estate no longer exists Peter is entitled to judgment as a matter of law under the principle of ademption by extinction; and a finding that he is the sole owner of the proceeds resulting from the sale," and judgment entered dismissing the petition. [Note 5] This appeal followed.

 Page 43 

 Discussion. "We review the allowance of a motion for summary judgment de novo to determine whether the moving party has established that, viewing the evidence in the light most favorable to the opposing party, 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law'" (citation omitted). Scarlett v. Boston, 93 Mass. App. Ct. 593, 596-597 (2018). We also review de novo the interpretation of a written trust, mindful that, "where the language of a trust is clear, we look only to that plain language." Ferri v. Powell-Ferri, 476 Mass. 651, 654 (2017).

 1. The trust. By its plain language, the trust in this case is an express trust "of a donative nature." Matter of the MacMackin Nominee Realty Trust, 95 Mass. App. Ct. 144, 150 (2019). It is governed by the Massachusetts Uniform Trust Code, G. L. c. 203E (MUTC). [Note 6] G. L. c. 203E, §§ 102, 105 (a). See De Prins v. Michaeles, 486 Mass. 41, 45-46 (2020). The MUTC provides in relevant part that "[a] trust may be created by: (1) transfer of property to another person as trustee during the settlor's lifetime . . . [or] (2) declaration by the owner of property that the owner holds identifiable property as trustee." G. L. c. 203E, § 401. Here, Peter created the trust when he executed the declaration of trust and the deed transferring his interest in the property to himself as trustee for Marianne, for disposition to her upon his death. [Note 7] See G. L. c. 203E, § 401 (1), (2).

 The language of the declaration of trust and the quitclaim deed specifically prohibit Peter from selling or transferring the trust property without court permission and is binding on Peter, his heirs, successors, and assigns. Therefore, it is an irrevocable trust, as Peter now concedes. [Note 8] That is to say, the trust cannot be recalled or revoked. See Ferri, 476 Mass. at 658. A noncharitable irrevocable

 Page 44 

 trust cannot be terminated without the consent of all beneficiaries and permission of the court. See G. L. c. 203E, § 411 (b).

 2. Ademption by extinction. "Ademption" has been defined as "[t]he destruction or extinction of a testamentary gift by reason of a bequeathed asset's ceasing to be part of the estate at the time of the testator's death." Black's Law Dictionary 48 (11th ed. 2019). Because the MUTC does not address the doctrine of ademption by extinction, we apply the common law. See G. L. c. 203E, § 106; De Prins, 486 Mass. at 45 ("the common law continues to apply where the MUTC does not address the situation at issue").

 "It is settled law in this Commonwealth that a specific legacy or devise is adeemed when a testator, during [his] lifetime, disposes of the subject of the specific legacy." Kelley v. Neilson, 433 Mass. 706, 711 (2001). The doctrine of ademption "seeks to give effect to a testator's probable intent by presuming he intended to extinguish a specific gift of property when he disposed of that property prior to his death." Wasserman v. Cohen, 414 Mass. 172, 174 (1993). "If the testator subsequently parts with the property, even if he exchanges it for other property or purchases other property with the proceeds, the legatee has no claim on the estate for the value of his legacy. The legacy is adeemed by the act of the testator." Rose v. Rose, 80 Mass. App. Ct. 480, 482 (2011), quoting Kelley, supra at 711. Although most often applied to specific property bequeathed by a will, the doctrine of ademption by extinction has also been applied in the case of a specific gift of real estate held in a revocable inter vivos trust. See Wasserman, supra at 176. However, Peter cites no authority, and we have found none, for the proposition that the doctrine of ademption by extinction applies to an irrevocable trust.

 The doctrine of ademption by extinction takes into account that a testamentary bequest is not a completed transfer until the testator's death. That is because the testator can revoke the will and extinguish the bequest at any time before his death. Similarly, the settlor of a revocable inter vivos trust may rescind the transfer of property to a trust by revoking the trust. By contrast, an irrevocable trust is an independent entity, subject to the terms of the trust and otherwise beyond the settlor's control. See G. L. c. 203E, § 411. Transfer of property to an irrevocable trust is complete at the time of transfer, and the property thereafter is part of the trust corpus. The trust settlor cannot rescind the transfer without the consent of all beneficiaries and the court. See G. L. c. 203E, § 411 (b). Accordingly, the settlor has no power following a transfer of property

 Page 45 

 to an irrevocable trust "to extinguish [that] specific gift of property." Wasserman, 414 Mass. at 174.

 The cases applying the doctrine of ademption by extinction all involve an affirmative act of the testator, trustee, or their representative, evidencing an intent to dispose of the property. See, e.g., Kelley, 433 Mass. at 714-715 (testatrix executed purchase and sale agreement); Wasserman, 414 Mass. at 173 (testatrix sold property and did not convey her interest to trust); Moffatt v. Heon, 242 Mass. 201, 203-204 (1922) (testator sold interest in mortgage); Rose, 80 Mass. App. Ct. at 483 (testatrix conveyed portion of real property and combined remainder with second lot); BayBank Harvard Trust Co. v. Grant, 23 Mass. App. Ct. 653, 654-655 (1987) (testatrix withdrew funds and invested elsewhere). Here, Peter took no action to dispose of the property. [Note 9] Indeed, as a matter of law, he was prohibited from doing so by the clear language of the irrevocable trust. In these circumstances, where the property was held in an irrevocable trust and sold as the result of a court-ordered partition of the property rather than an affirmative act of the trustee, the doctrine of ademption by extinction does not apply. [Note 10]

 Conclusion. We agree with the judge's assessment that the issue in this case is the rightful ownership of the proceeds that remain from the sale of the property, and that Marianne's petition should be treated as a request for a judgment declaring the rightful owner of those proceeds. Because we conclude that the judge erred in applying the doctrine of ademption by extinction, and because that was the sole basis for the order of summary judgment and no other issues remain, we reverse the judgment and remand the case for entry of a new judgment declaring that Marianne is the lawful owner of the proceeds held in escrow by the Land Court commissioner. Even viewing the facts in the light most favorable to Peter, Marianne is entitled to this judgment as a matter of law.

So ordered.

FOOTNOTES
[Note 1] Because the parties share a last name, we will refer to them by their first names. 

[Note 2] The declaration of trust stated: 

"The trustee hereunder shall hold the trust property exclusively for the benefit of the beneficiaries and shall not without leave from a court of competent jurisdiction in the Commonwealth of Massachusetts and with notice to all trust beneficiaries, sell, transfer, mortgage, pledge, hypothecate or cause or suffer any encumbrance to be made against the trust property."

[Note 3] Peter filed documents at the Barnstable County registry of deeds confirming the terms of the trust in 2007 and again in 2017. 

[Note 4] The mortgage was assigned to OneWest Bank, FSB in 2011. 

[Note 5] The judge treated Marianne's petition as a complaint for declaratory judgment rather than a petition to remove Peter as trustee after "it became clear during the hearing before the [c]ourt that the relief sought by the parties is a determination of the rightful owner of the proceeds of the sale of the property." 

[Note 6] The MUTC was enacted on July 8, 2012, effective the same date, and applies to (1) "all trusts created before, on or after the effective date," and (2) "all judicial proceedings concerning trusts commenced on or after the effective date." St. 2012, c. 140, § 66. 

[Note 7] We are not persuaded by Peter's argument that the declaration of trust he executed in 1987 did not create a valid trust because the trust was not funded. We interpret the quitclaim deed executed by Peter in conjunction with the declaration of trust as one conveying Peter's interest in the property to himself as trustee for Marianne. 

[Note 8] In his answer to the petition, Peter claimed that there was no legally enforceable trust or, in the alternative, that the trust was revocable. However, in his summary judgment motion and at oral argument before this court, Peter conceded that the trust was irrevocable. 

[Note 9] We do not consider Peter's filing of a written revocation of the trust on April 23, 2019, as an affirmative act evidencing an intent to dispose of the property. The document was a nullity because the trust was irrevocable. Moreover, the written revocation was created and filed as part of Peter's counterclaim, four months after the property was partitioned and sold. 

[Note 10] Because we conclude that the doctrine of ademption by extinction does not apply, we need not address Marianne's other arguments. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.